UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA

v.   CASE NO. 1:18-cr-11
     Judge Mattice/Steger

JERRY WAYNE WILKERSON,
MICAHEL CHATFIELD,
KASEY NICHOLSON,
BILLY HINDMON, and
JAYSON MONTGOMERY

**AMENDED JOINT MOTION TO STRIKE AND
INCORPORATED MEMORANDUM OF LAW**

Defendants Jerry Wayne Wilkerson, Michael Chatfield, Kasey Nicholson, Billy Hindmon, and Jayson Montgomery, by and through undersigned counsel, hereby files this Amended Motion to Strike, pursuant to Rule 7(d), Fed.R.Crim.P., and E.D. Tenn. LR 5.1 and LR 7.1, and as grounds therefore, states the following:

**I. INTRODUCTION**

1. The government filed a Superseding Indictment against Mr. Wilkerson on or about September 25, 2018, filed a Second Superseding Indictment on March 26, 2019, and filed a Third Superseding Indictment (the "Indictment") on May 29, 2019. This Amended Motion is filed in response to the Third Superseding Indictment.

2. The Indictment alleges violations of 42 USC § 1320a-7b(b)(1) and (2) (Receipt and Payment of Illegal Remuneration);18 USC § 1347 (Health Care Fraud);18 USC § 1349 (Conspiracy to Commit Health Care Fraud); 18 USC § 1341 (Mail Fraud); 18 USC § 1343 (Wire Fraud); and, 18 USC § 1957 (Money Laundering).

3. The Indictment alleges that pharmaceutical sales representative Mr. Wilkerson, by and through his company Top Tier Medical, LLC ("Top Tier"), engaged in a scheme to defraud commercial and government health insurance plans by marketing compounded pharmaceuticals in violation of applicable laws.

4. Upon the motion of a criminal defendant, "the court may strike surplusage from the indictment or information" pursuant to Rule 7(d), Fed.R.Cim.P. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4 (E.D. Tenn. 2011); *U.S. v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors.").

5. The Advisory Committee notes to Rule 7(d) provide that "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329.

6. Counts 141 through 146, 157 through 159, and 160-161 are necessarily limited to claims related to government-based health insurance, pursuant to the plain language of 42 USC § 1320a-7b(b)(2):

> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service *for which payment may be made in whole or in part under a Federal health care program*, or
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item *for which payment may be made in whole or in part under a Federal health care program*,

shall be guilty of a felony and upon conviction thereof,
shall be fined not more than $25,000 or imprisoned for not
more than five years, or both. [emphasis added]

## II. MATTERS TO BE STRICKEN

### A. Count 141

7. In this case, in Count 141, the government alleges that a commission payment of $32,770.00 was made by Top Tier to sales representative "BTG" (Defendant Billy Hindmon) on 11/3/14 based upon Tricare claims of $163,851.33 (representing a 20% sales commission structure).

8. However, that total of $163,851.33 contained $23,453.73 in commercial Express Scripts claims, and only $140,397.60 of the claims are attributable to Tricare.

9. Therefore, the alleged sales commission attributable to Tricare claims in Count 142 is at most $28,079.52 (20% of $140.397.60). *See* Exhibit A.

10. It is inaccurate, and unnecessarily prejudicial for the government to allege an illegal payment regarding Tricare claims in Count 142 of $32,770.00, when at most, it can be $28,079.52. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329.

11. The differential between the erroneous $32,770.00 in Count 141, and the actual amount that could be alleged of $28,079.52 is approximately 17%, and therefore not *de minimus*.

12. The portions of Count 141 unrelated to a government health plan should be stricken, and the alleged amount of illegal remuneration in Count 141 must be reduced to $28,079.52.

3

## B. Count 157

13. In Count 157, the government alleges that a commission payment of $420,311.60 was made by Central Rexall to Top Tier on 11/14/14 based upon Tricare claims of $1,050,779.01 (representing a 40% sales commission structure).

14. However, that total of $1,050,779.01 contained $913,652.69 in commercial Blue Cross, Caremark, Catamaran, CVS Caremark, Express Scripts, Humana, Medco, and OptumRx claims, and only $137,126.32 of the claims are attributable to Tricare.

15. Therefore, the alleged sales commission attributable to Tricare claims in Count 157 is at most $54,850.53 (40% of $137,126.32). *See* Exhibit B.

16. It is inaccurate, and unnecessarily prejudicial for the government to allege an illegal payment regarding Tricare claims in Count 158 of $420,311.60, when at most, it can be $54,850.53. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329.

17. The differential between the erroneous $420,311.60 in Count 157, and the actual amount that could be alleged of $54,850.53 is an extraordinary 666%, and therefore not in any manner *de minimus*.

18. The portions of Count 157 unrelated to a government health plan should be stricken, and the alleged amount of illegal remuneration in Count 157 must be reduced to $54,850.53.

### C. Count 158

19. In Count 158, the government alleges that a commission payment of $355,189.00 was made by Soothe to Top Tier on 12/10/14 based upon Tricare claims of $891,164.83 (representing a 40% sales commission structure).

20. However, that total of $891,164.83 contained $149,237.55 in commercial Catamaran, Medco, and patient-pay claims, and only $741,927.28 of the claims are attributable to Tricare.

21. Therefore, the alleged sales commission attributable to Tricare claims in Count 158 is at most $296,770.91 (40% of $741,927.28). *See* Exhibit C.

22. It is inaccurate, and unnecessarily prejudicial for the government to allege an illegal payment regarding Tricare claims in Count 158 of $355,189.00, when at most, it can be $296,770.91. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329.

23. The differential between the erroneous $355,189.00 in Count 158, and the actual amount that could be alleged of $296,770.91 is approximately 20%, and therefore not *de minimus.*

24. The portions of Count 158 unrelated to a government health plan should be stricken, and the alleged amount of illegal remuneration in Count 158 must be reduced to $296,770.91.

### D. Count 159

25. In Count 159, the government alleges that a commission payment of $728,660.47 was made by Florida Pharmacy Solutions to Top Tier on 1/28/15 based upon Tricare claims of $2,081,887.05 (representing a 35% sales commission structure).

6

26. However, that total of $2,081,887.05 contained $1,016,895.54 in commercial Express Scripts and Medco claims, and only $1,064,991.51 of the claims are attributable to Tricare.

27. Therefore, the alleged sales commission attributable to <u>Tricare</u> claims in Count 159 is at most $372,747.03 (35% of $1,064,991.51). *See* Exhibit D.

28. It is inaccurate, and unnecessarily prejudicial for the government to allege an illegal payment regarding <u>Tricare</u> claims in Count 159 of $728,660.47, when at most, it can be $372,747.03. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329.

29. The differential between the erroneous $728,660.47 in Count 159, and the actual amount that could be alleged of $372,747.03 exceeds 95%, and therefore is not in any manner *de minimus*.

### E. <u>Count 160</u>

30. In Count 160, the government alleges that a commission payment of $205,351.60 was made by Top Shelf, LLC. However, only $27,425.26 of the claims at issue in that count are attributable to Tricare. The remaining claims are attributable to commercial insurance, based upon the sales commission reports the government provided in discovery. This differential is not de minimus.

### F. <u>Count 161</u>

31. In Count 161, the government alleges that a commission payment of $162,475.66 was made by Top Shelf, LLC. 5. However, only $34,547.33 of the claims at issue in that count are attributable to Tricare. The remaining claims are attributable to commercial insurance, based upon the sales commission reports the government provided in discovery. This differential is not de minimus.

7

## III. SUMMARY

32. Counts 141, 157, 158, 159, 161, and 162 should be stricken, pursuant to the grounds stated above. *U.S. v. Kidd*, Case No. 3:11-CR-20, p. 4; *U.S. v. Kemper*, 503 F.2d at 329 and Rule 7(d), Fed.R.Crim.P.

Respectfully submitted,

s/ *Mark S. Thomas*
Mark S. Thomas
Florida Bar No. 0001716
THOMAS HEALTH LAW GROUP, P.A.
5200 SW 91st Terrace, Suite 101-B
Gainesville, FL 32608
(352) 372-9990 (office)
(855) 629-7101 (fax)
*Attorney for Jerry Wayne Wilkerson*

*s/ David M. Eldridge*
DAVID M. ELDRIDGE (BPR # 012408)
ZACHARY R. WALDEN (BPR #035376)
ELDRIDGE & BLAKNEY, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010
*Attorneys for Michael Chatfield*

s/ *Gianna Maio*
GIANNA MAIO, (BPR #024579)
FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349
*Attorney for Billy Hindmon*

*s/ R. Dee Hobbs*
R. DEE HOBBS, (BPR #10482)
P.O. Box 11308
Chattanooga, Tennessee 37401
(423) 266-6461 (Phone)
(423) 756-8521 (Fax)
*Attorney for Jayson Montgomery*

*s/ Brian O'Shaughnessy*
BRIAN O'SHAUGHNESSY, (BPR #025991)
O'SHAUGHNESSY & CARTER, PLLC
735 Broad Street, Suite 1000
Chattanooga, Tennessee 37402
(423) 267-3807
*Attorney for Kasey Nicholson*

9