UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **1:18-cr-11** |
| v. | ) | |
| | ) | **Judge Mattice/Steger** |
| JERRY WAYNE WILKERSON, | ) | |
| MICHAEL CHATFIELD, | ) | |
| KASEY NICHOLSON, | ) | |
| BILLY HINDMON, and | ) | |
| JAYSON MONTGOMERY | ) | |

## GOVERNMENT'S AMENDED RESPONSE TO DEFENDANTS' MOTION (AND AMENDED MOTION) IN LIMINE TO PROHIBIT TESTIMONY REGARDING CO-PAYMENTS

COMES NOW the United States of America by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Perry H. Piper and Franklin P. Clark, Assistant United States Attorneys, and hereby offer this response to defendant Jerry Wayne Wilkerson's ("Wilkerson") Motion in Limine (R. 170) and Amended Motion in Limine (R. 172) seeking to limit testimony regarding Wilkerson's fraudulent concealment regarding co-payments. The other defendants have moved to join in this motion. (R. 174, Defendants' Joint Motion to Adopt.) Counsel for the government had inadvertently omitted the inclusion of the other defendants. The United States opposes the motion.

### Background

An essential part of the scheme to defraud in this case involved recruiting customers to order high-priced compounded medications through the defendants. During the investigation stage, agents interviewed dozens of witnesses who ordered the medications. Some of those witnesses testified before the Grand Jury.

The amount of money charged to the insurance company for each prescription varied. However, many of the prescriptions would be billed at $10,000 per order, and sometimes higher. Some of the prescriptions were reimbursed at close to $15,000. Furthermore, when agreeing to order the compounded drugs, the customers were told that there would be no cost to them. There were instances where the defendants paid the co-payment to the insurance company, or where the pharmacy itself would waive the co-pay. It was not unusual for one customer to have his/her insurance billed for over $100,000 for the medications. The defendants or the pharmacies would ensure that the co-pay was covered (or waived). Finally, most of the customers were offered an inducement to order the creams; they were told that they would be participating in a study and would receive a payment for the study. Generally, the study fee paid to the customers amounted to around $100. Sometimes, the study fee was paid for each prescription.

## ARGUMENT

### I. Evidence regarding defendants' fraudulent concealment regarding the co-payments is relevant, probative, and admissible

The scheme to defraud in this case involved, among other things, the assurance of no out-of-pocket cost to the customer for the exorbitantly priced compounded medications, thus inducing otherwise unwilling customers to agree to ordering the items. The fact that a co-payment was not collected from the customer was not communicated to the insurance company. The defendants claim that this evidence should not be admitted, as this conduct, in and of itself, does not violate a state or federal law. (R. 172, Amended Motion, ¶ s 13-14.) However, the defendants overlook the fact that not all underlying conduct forming the basis of a scheme to defraud must be illegal in and of itself. *United States v. Beyer*, 106 F.3d 175, 181 (7th Cir. 1997). "Acts which are themselves legal lose their legal character when they become elements of an unlawful scheme." *Beyer*, 181. In the case of private insurance (Tricare does not require co-payments), the payment of the co-pay

2

by the defendants, or the waiving of the co-pay by the pharmacies, may not violate any specific statute and therefore would not be per se illegal, but it would certainly be evidence of the scheme and conspiracy to defraud.

As the government has noted in a previous filing, for purposes of sustaining a fraud conviction, it does not matter who made the misrepresentation or concealment; what matters is that each defendant participated in a scheme to defraud in which someone misrepresented, omitted, or concealed a material fact. *United States v. Birnie*, 193 F. App'x 528, 536 (6th Cir. 2006) (We find that the evidence need only show that each defendant participated in a scheme to defraud that involved a misrepresentation of material fact). Stated another way, there is no requirement that any named defendant commit an overt act which is a crime, rather it is enough that one of the conspirators/co-defendants developed a scheme, the defendants joined, and participated in, the scheme/conspiracy, and that an overt act was committed in furtherance of it. *Id*. The overt act itself "need not be [] a crime," but could be completely innocent activity. *United States v. Bradley*, 917 F.3d 493 (6th Cir. 2019) (citing *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99 (1942)).

Evidence is "relevant" if it "has a tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. During the investigation, customers who ordered creams were interviewed. None of the customers were initially aware of the cost of the medication. Many stated that they would not have ordered the medication had it required any financial commitment on their part. Evidence of the defendants' representations regarding customers' avoidance of a co-pay, and their oftentimes paying the co-pay themselves or causing the co-pay to be forgiven (or with knowledge that it would be), while at the same time not communicating this fact to the ultimate victim, is most assuredly

3

relevant to the presentation of his entire scheme. It is relevant to the charged fraud, highly probative of the scope and significance of the charged fraud, and should be admitted.

**II.      Evidence regarding co-payments is not unduly prejudicial**

The probative value of the co-pay is strong. It shows the full nature of the scheme and the intent to defraud that the United States must prove beyond a reasonable doubt. Most telling regarding the lack of unfair prejudice is defendant Wilkerson's own assertion: That the conduct in and of itself does not violate the law. (R. 172, Amended Motion, ¶ 13.) The United States does not concede that Wilkerson's claim in this regard is correct under all circumstances. Nevertheless, Wilkerson cannot claim that his handling of co-payments is perfectly legal and acceptable, while also claiming that evidence of it is unfairly prejudicial. If, as Wilkerson claims, his conduct in this area is totally above board and permissible, then it cannot possibly be so unfairly prejudicial as to substantially outweigh any probative value.

The evidence the government seeks to introduce is directly probative of the defendants' intent and motive. "[E]vidence that undermines one's defense by virtue of its 'legitimate probative force' does not unfairly prejudice the defendant." *United States v. Censke*, 449 F. App'x 456, 467 (6th Cir. 2011) (quoting *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988)). The effect of the evidence must not simply be prejudicial, but it must be "unfairly" so: "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Ray*, 549 F. App'x 428, 434 (6th Cir. 2013) (citing *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).

4

**Conclusion**

For the reasons set forth above, the defendants' motion in limine to prohibit testimony regarding the co-payments should be denied.

Respectfully submitted,

J. DOUGLAS OVERBEY
United States Attorney

By: *s/Perry H. Piper*
PERRY H. PIPER, BPR # 013384
Assistant U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
Perry.Piper@usdoj.gov

*s/Franklin P. Clark*
FRANKLIN P. CLARK
Assistant U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 752-5140
Frank.Clark@usdoj.gov