UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-CR-11 |
| ) | |
| JERRY WAYNE WILKERSON, ) | Judge Mattice |
| MICHAEL CHATFIELD, ) | |
| KASEY NICHOLSON, ) | |
| BILLY HINDMON, and ) | |
| JAYSON MONTGOMERY ) | |
| ) | |

## **ORDER**

Before the Court is the Government's Motion for Notification of an Advice of Counsel Defense. [Doc. 134]. For the reasons stated more fully herein, the Government's motion will be **DENIED**.

### I. BACKGROUND

In this criminal action, the Government alleges that Defendants conspired and aided and abetted each other in committing health care fraud (18 U.S.C. § 1347); committing wire and mail fraud (18 U.S.C. §§ 1341, 1343); paying or receiving "illegal remunerations" (also colloquially known as "kickbacks" or "bribes") (42 U.S.C. § 1320a-7b(b)(2)); and committing "other crimes." [Doc. 134 at 2]. More specifically, the Government alleges the Defendants joined in a scheme which involved fraudulently "marketing topical creams and other medications." [Doc. 131, Third Superseding Indictment at 1–3].

It is alleged that Defendants would sell topical creams or medications to customers. Following this, healthcare professionals employed by one of the Defendants would perfunctorily prescribe the customers the medication that had been sold. The

prescription was thereafter forwarded to a compounding pharmacy which filled the prescription. [*Id.*]. The pharmacy "would then bill [a] health insurance provider or government funded insurance (particularly TRICARE)" for the prescription. [*Id.*]. Afterwards, the filling pharmacy allegedly sent Defendants a "commission ... in the form of a large percentage of the amount paid for the creams/medication by" the relevant insurance provider. [*Id.*]. The alleged scheme also involved making materially false representations to the insurance providers. [*Id.*] For example, it is alleged members of the conspiracy represented that customers were paying a copay on the prescriptions, when they either were not or were being reimbursed. [*Id.*].

As this matter approaches trial, the Government is concerned that some of the Defendants may rely on an "advice of counsel" defense in their case in chief. [Doc. 134 at 2]. This concern is apparently the result of the Government learning that some of the Defendants had previously "met with counsel regarding the scheme" and that some have "stated to others" that they had "cleared" the alleged scheme "through their attorneys." [*Id.*]. Now the Government seeks to have this Court compel Defendants to disclose in advance of trial an intention to rely on an advice of counsel defense. In addition to this, the Government wants the Defendants to turn over any "communications by and between the defendant intending to rely on such defense and the attorney(s) who provided the advice at issue." [Doc. 134 at 1]. According to the Government, it is "entitle[d]" to this information. [*Id.* at 3].

The Government further asks (styled as a motion *"in limine"*) that if any of the Defendants do not comply with its demands, this Court should prevent him or her from raising an advice of counsel defense at trial. [*Id.* at 1]. The Government claims that if Defendants waited until trial to raise an advice of counsel defense, the waiver of their

2

attorney-client privilege and the disclosure of relevant documents under Rule 26.2 would "waste judicial resources and would cause inconvenience to the jurors and other witnesses." [*Id.*].

## II. DISCUSSION

As when deciding any issue, it is important for the Court to keep first principles in mind. The criminal statutes relied upon by the Government in this case sound in fraud. It is axiomatic that fraud may be addressed civilly or criminally. In this case, the government has made a conscious decision to address the alleged fraud criminally. That decision carries with it certain consequences.

Under our constitutional system, a criminal defendant—

need not do anything at all to defend himself, and certainly he cannot be required to help convict himself. Rather he has an absolute, unqualified right to compel the State to investigate its own case, find its own witnesses, prove its own facts, and convince the jury through its own resources. Throughout the process the defendant has a fundamental right to remain silent, in effect challenging the State at every point to: "Prove it!"

*Williams v. Florida*, 399 U.S. 78, 112 (1970) (Black, J., dissenting). Criminal defendants, in addition to this, have a firmly rooted constitutional right to "present a defense" at trial. *Washington v. Texas*, 388 U.S. 14, 19 (1976).

Moreover, civil lawsuits and criminal prosecutions proceed in a very different manner. These differences are the product of the historical development of the American civil and criminal justice systems and their English common law antecedents, as well as the protections afforded criminal defendants by the United States Constitution.

Had this case had been brought civilly, as it undoubtedly could have been,[1] the Government would have broad access to a wide array of procedural and discovery tools. In a civil case, for example, litigants have a right to discover "any nonprivileged matter that is relevant to a party's claim or defense." Fed. R. Civ. P. 26(b)(1). A *civil* defendant, more to the point, must raise an affirmative defense in his answer, or else the defense can be deemed waived. *See, e.g.*, Fed. R. Civ. P. 8(c)(1).

But this case is quite obviously not a civil case, and criminal defendants do not plead an "answer" to indictments. Even if the advice of counsel defense were a waivable "affirmative defense," as the Government suggests, the concept of waivable defenses is a creature of civil procedure. In any event, the Court is inclined to believe an advice of counsel defense is not an "affirmative defense" in the criminal context. Rather, an advice of counsel defense merely negates an element of criminal fraud—*i.e.* "unlawful intent." *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017); *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2018) (same).[2]

---

[1] The Court is aware that there have been a number of affirmative civil enforcement actions that the Department of Justice has brought or intervened in, targeting fraudulent schemes that involved topical creams and compounding pharmacies. *See, e.g.*, *United States ex rel. Knopf v. AgeVital Pharmacy, LLC et al.*, Case No. 8:15-cv-2591-T-36JSS (M.D. Fla.) (involving a claim alleging TRICARE fraud brought under the False Claims Act in which the government intervened); *United States of America et al. v. Smart Pharmacy, Inc. et al*, Case No. 3:16-cv-387-BJD-JBT (M.D. Fla.).

[2] To the extent courts use the term affirmative defense or advice of counsel defense in the criminal context, the "label is actually a misnomer," because where proven, good faith reliance on counsel in fact "negates the element of wrongful intent of a defendant that is required for conviction." *United States v. Stevens*, 771 F. Supp. 2d 556, 565 (D. Md. 2011). The Sixth Circuit does not appear to have addressed the issue in the context of a criminal action, but the Court finds the reasoning of the United States Court of Appeals for the Second and Third Circuits to be persuasive. The Second Circuit explained: "[T]he claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of jurors about whether the government has proved the required element of the offense...." *Scully*, 877 F.3d at 476. The burden of proof thus does not shift or diminish when a defendant raises the defense, and courts have stricken jury instructions that indicate the defendant must "avail himself" of the advice of counsel defense, *Greenspan*, 923 F.3d at 147, or "satisfy" certain elements to "establish" the defense. *Scully*, 877 F.3d at 477.

4

Nevertheless, despite this *not* being a civil action, the Government's argument relies heavily, almost exclusively, on civil cases. [*See* Doc. 134 at 3–4]. It should go without saying that those cases are inapposite. Because the Government has elected to prosecute this case criminally, it has put Defendants' liberty interests at stake. Doing so implicates a whole host of constitutional concerns that are nonexistent in the civil context.

Underlying the Government's instant motion lie two major assumptions. The first is that this Court has the constitutional authority (absent formal rules or binding precedent) to require a criminal defendant to disclose an anticipated defense and related evidence prior to trial. Of course, the Court realizes this notion did not arise in a vacuum. It is true that the Federal Rules of Criminal Procedure do require criminal defendants to at times disclose certain things. Take for instance Rule 16(b)(1)(A), requiring the disclosure of evidence and particular testimony, and Rule 12.1, requiring advance notice of an alibi defense.

It is important to note, however, that these and related rules have something in common. Each requirement that a defendant provide notice or evidence mandates the government's reciprocity. For example, "*if*" a criminal defendant requests that the government disclose certain evidence "*and the government complies*," the defendant has to reciprocate by providing certain similar but limited information. Fed. R. Crim. P. 16 (b)(1)(A) (emphasis added). Likewise, Rule 12.1 provides for "reciprocal discovery" on "its face." *United States v. Booker*, No. 1:11-CR-00255-TWT, 2012 WL 1458009, at *2 (N.D. Ga. Mar. 12, 2012). "[T]he rule does not 'require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the [s]tate.'" *Id.* (cleaned up) (quoting *Wardius v. Oregon*, 412 U.S. 470, 476 (1973)).

5

There is good reason for the reciprocity requirements found in the rules pertaining to prosecutorial discovery. Constitutional due process "forbids" compelling a criminal defendant to disclose anything to the government without the imposition of so-called "reciprocal discovery rights." *Wardius,* 412 U.S. at 472. Absent reciprocity, the Federal Rules of Criminal Procedure that mandate a defendant's disclosure would run afoul of the Constitution.[3] *Id.* What the Government has requested here, however, contains no hint of reciprocity, and it is not the Court's role to assist the Government in conjuring up some reciprocal arrangement to make an otherwise unconstitutional demand constitutional—assuming that is even possible or desirable.

The Government would argue that requiring the Defendants to provide the requested notice is consistent with their current obligations under Rule 16. [Doc. 134 at 4]. Put simply, the Government claims it is only asking for what it is already due. [*See id.*]. It is true that Rule 16 requires a defendant to turn over "Documents and Objects" that are "(i) within the defendant's possession, custody, or control" when "(ii) the defendant intends to use the item in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). However, here the Government is asking for more than that. It wants to compel the Defendants to waive their attorney-client privilege in anticipation of trial and explicitly signal whether they will employ a specific defense. That request is well outside the modest confines of Rule 16.

The Government next argues that the Court can expand Defendants' obligations under Federal Rule of Criminal Procedure 16 to compel notice of the advice of counsel

---

[3]     This is not to say that compelling a defendant to provide disclosures as directed by the Federal Rules of Criminal Procedure is *per se* constitutional. Some scholars "continue to be concerned about the constitutionality of discovery by the prosecution." 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (Criminal) § 260 Discovery by the Government—Constitutionality (4th ed. 2019).

defense and produce the requested evidence. [*See* Doc. 134 at 6]. Although some courts have been persuaded by such an argument, *see United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018), there is hardly a consensus on the idea. *See United States v. Meredith*, No. 3:12-cr-143-S, 2014 WL 897373, at *1 (W.D. Ky. Mar. 5, 2014) (denying the government's request to require a criminal defendant to disclose an advice of counsel defense held, "The United States has provided no authority to compel pretrial disclosure beyond the bounds of Rule 16").

Whatever merit there is in expanding a *defendant's*, as opposed to the government's, discovery obligation under Rule 16, if it were to be done, it should be done *prior* to a criminal defendant requesting and the government providing its discovery information. In other words, assuming a court has the power to expand a defendant's obligations under Rule 16, it should be ordered before—not after—the defendant has voluntarily subjected himself to disclosure under that rule. Courts should not alter the terms of the deal once the defendant enters into it. Here, the Government has already made its disclosures under Rule 16 (presumably upon Defendants' request). [*See* Doc. 134 at 5 n.3]. The time for expanding Defendants' obligations under Rule 16, then, has long since passed.

Further, while the Federal Rules of Criminal Procedure require defendants to give advance notice and discovery of certain, carefully enumerated defenses, *see* Fed. R. Crim. P. 12.1 (alibi defense), 12.2 (insanity defense), 12.3 (public-authority defense), even the drafters of those rules could not agree on their propriety. *See* Fed. R. Crim. P. 12-1, cmt. 1974 - Advisory Comm. Notes. For example, the alibi defense notice rule received "vehement[] object[ions]" from "five members of the committee." *See id.* Whatever wisdom supported the adoption of those rules, courts should not *ad hoc* invent new ways

7

to coerce criminal defendants to assist the government in their prosecution—absent a compelling reason to do so. And it is certainly not a sufficient justification that doing so would be more convenient for the Government and the Court, as the Government seems to argue here. "[J]ealously guard[ed]" constitutional principles are not casually tossed aside for the sake of expediency, much less for the mere potential that there may be some future inconvenience. *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (quoting *Jacob v. New York*, 315 U.S. 752, 752 (1942)).[4]

The next presumption underlying the Government's motion is that if Defendants are going to present an advice of counsel defense, that they ought to be required to make up their minds and tell everyone sometime ahead of trial. But other than a seemingly arbitrary, unspecified sentiment about when a proper defense must be formulated, the Court does not know why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether.

The Defendants here, for example, could wait and decide what defenses to raise once they see what evidence the Government presents at trial. Or perhaps they believe the Government is, in any event, unable to put on a case that will survive a motion for a directed verdict. If that is the case, it would be untenable—and, most likely, unconstitutional—to require Defendants to turn over potential evidence (most of which is currently privileged) to the Government or risk forfeiting a defense. The source of that

---

[4] Although at least one district court has found "nothing inherently unconstitutional, or otherwise improper, in a requirement that a defendant make a pretrial disclosure of his intention to assert a certain type of defense, even where the disclosure involves privileged information," *United States v. Mubayyid*, No. 05-40026-FDS, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007), for the reasons stated herein, the Court respectfully disagrees.

8
Case 1:18-cr-00011-HSM-CHS Document 189 Filed 07/02/19 Page 8 of 9 PageID #: 975

concept, whatever it might be, is fundamentally foreign to the adversarial system of criminal justice contemplated by the United States Constitution.

## III. CONCLUSION

The Court finds no good cause to compel the Defendants to disclose whether or not they intend to rely on an advice of counsel defense. Accordingly, the Government's motion [Doc. 134] is **DENIED**.

**SO ORDERED** this 2nd day of July, 2019.

                                             */s/ Harry S. Mattice, Jr.*
                                             HARRY S. MATTICE, JR.
                                         UNITED STATES DISTRICT JUDGE