UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-CR-11 |
| ) | |
| JERRY WAYNE WILKERSON, ) | Judge Mattice |
| MICHAEL CHATFIELD, ) | |
| KASEY NICHOLSON, ) | |
| BILLY HINDMON, and ) | |
| JAYSON MONTGOMERY ) | |
| ) | |

# **ORDER**

Before the Court are various Defendants' Joint Motion to Strike Surplusage from the Third Superseding Indictment, [Doc. 165], Amended Joint Motion to Dismiss Count 178, [Doc. 171], Amended Joint Motion to Dismiss, [Doc. 175], Amended Joint Motion to Strike, [Doc. 176], Joint Motion to Dismiss Illegal Remuneration Counts, [Doc. 196], and Joint Motion for Bill of Particulars, [Doc. 167].

For the reasons stated herein, those Defendants' Motions to Dismiss, [Docs. 171, 175, 196] will be **DENIED**. Defendants' Amended Joint Motion to Strike [Doc. 176] will be **DENIED**. Defendants Chatfield, Nicholson, and Hindmon's Motion to Strike Surplusage, [Doc. 165], will be **GRANTED in part and DENIED in part**. Defendants' Joint Motion for Bill of Particulars, [Doc. 167], will be **DENIED**. For case management purposes, the outstanding motions in limine, [Docs. 95, 96, 97, 107, 117, 161, 162, 163, 169, 170, 172, 173], will be **DENIED without prejudice and with leave to refile at an appropriate time**.

-1-
Case 1:18-cr-00011-HSM-CHS   Document 242   Filed 09/09/19   Page 1 of 20   PageID #: 1279

I.   ANALYSIS

In the Third Superseding Indictment, the Government charges Defendants with one-hundred-seventy-eight separate counts. [*See* Doc. 131]. Those counts include charges against various Defendants for health care fraud (18 U.S.C. § 1347), conspiracy to commit the same (18 U.S.C. § 1349), wire and mail fraud (18 U.S.C. §§ 1341, 1343), the payment or receipt of illegal remunerations (42 U.S.C. § 1320a-7b(b)(1)–(2)), aggravated identity theft (18 U.S.C. § 1028A), money laundering (18 U.S.C. § 1957), and conspiracy to defraud the United States through money laundering (18 U.S.C. § 371). [*Id.*].

In Defendants' various motions to dismiss and strike the indictment they claim, in sum, that the Third Superseding Indictment contains both too many and too few allegations. That is, Defendants primarily claim the Government has failed to sufficiently allege relevant facts to support the crimes that have been charged. In addition, Defendants claim some counts in the indictment are multiplicitous and duplicitous. Defendants further argue that the Third Superseding Indictment has too many irrelevant pled facts that will have a prejudicial effect on them at trial and, as a result, they seek to have supposedly superfluous portions stricken. Because the motions to dismiss are potentially dispositive, the Court starts there.

A.   **Defendants' Motions to Dismiss**

Federal Rule of Criminal Procedure 7(c)(1) requires indictments to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." When a defendant moves to dismiss an indictment as lacking "specificity" or otherwise failing to "state an offense," Fed. R. Crim. P. 12(b)(3)(B)(iii), (v), the applicable standard is straightforward:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished. Undoubtedly the language of the statute may be used in the general description of an offen[s]e, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged.

*United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019) (quoting *Hamling*, 418 U.S. at 117–18). To reiterate, it is "generally sufficient" if "an indictment [] recites [the] statutory language in describing the offense" (e.g., simply stating that on or about a particular date defendant "knowingly or intentionally" "possess[ed]" a particular controlled substance "with the intent to … distribute" it). *United States v. Hudson*, 491 F.3d 590, 593 (6th Cir. 2007) (quoting *Hamling*, 418 U.S. at 117). But more is needed if a mere recital of statutory elements does not "fully and unambiguously" state all the required elements of the offense or "*inform* the accused of the specific offense." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (emphasis added) (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)). In such a case, the indictment "must descend to particulars." *United States v. Cruikshank*, 92 U.S. 542, 544 (1875).

If an indictment alleges facts beyond mere recitation of statutory elements, the issue is whether those allegations are sufficiently particular—i.e., not too conclusory—and whether the well-pled facts indicate actions that actually constitute the crimes charged. The sufficiency standard in the criminal context is "notice." *United States v. Grant*, 850 F.3d 209, 214 (5th Cir. 2017) ("An indictment is intended to provide notice to the defendant that allows [her] to intelligently consider [her] defense or plea"). An indictment

need not allege facts that make a crime "plausible," rather it need only "fairly inform[] a defendant of the charge against which he must defend, and ... enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. That an indictment *could* have been more specific is inconsequential; that is almost always the case.

### 1. Health Care Fraud and Conspiracy to Commit Health Care Fraud

The crux of the Defendants' assault on the indictment regards the counts for health care fraud and conspiracy to commit health care fraud. [Doc. 175]. Defendants argue that the Third Superseding Indictment's allegations are insufficient because they do not allege that Defendants, as the "marketers" of pharmaceuticals, committed the crime of health care fraud or otherwise conspired to commit that crime. In sum, Defendants point out that the indictment alleges that it was "healthcare professionals," not them, who prescribed Defendants' customers the medications they sold, that pharmacies dispensed those medications pursuant prescriptions and billed insurance companies accordingly, and that the billing pharmacies were responsible for ensuring compliance with insurance deductibles, co-insurance, and the collection co-payments upon submitting a claim. Defendants assert not only that the indictment alleges that these actions or omissions were committed by others, but that they actually lacked the *de jure* authority to take those actions. In other words, they claim "there is no showing that the defendants were in legal control of the circumstances." [*Id.* ¶ 7]. As a result, Defendants argue the Third Superseding Indictment fails to allege they committed the offense of health care fraud.

### a. Application

Title 18 Section 1347(a) of the United States Code, which defines the health care fraud offense charged here, states in relevant part:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
> > (1) to defraud any health care benefit program; or
> >
> > (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

"To obtain a conviction for health care fraud under 18 U.S.C. § 1347, the Government is required to prove beyond a reasonable doubt that [the defendant]: '(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.'" *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009) (quoting *United States v. Hunt*, 521 F.3d 636, 642 (6th Cir. 2008)).

In their focus on the alleged actions of healthcare professionals, Defendants skip over a host of allegedly dishonest acts they allegedly performed as part of the "scheme." The indictment alleges, for instance, that Defendants told customers that they were being prescribed marketed medications as part of "an evaluation, trial or study," allegedly as a cover for why the customers would receive compensation "as an inducement" for signing up. [Doc. 131 ¶¶ 2, 11]. Defendants also allegedly misrepresented to customers that they would be not be subject to a co-payment upon receiving the medications. [*Id.* ¶ 2]. More

troubling, Defendants would "occasionally" skip this whole charade and allegedly use a customer's identification "to obtain prescriptions without the customer's authorization or knowledge." [Doc. 131 ¶ 10].

Section 1347 proscribes one from executing a scheme to "obtain, by means of false or fraudulent pretenses," money owned or controlled by a "health care benefit program." 18 U.S.C. § 1347(a). The statute makes no distinction between misrepresentations made directly to a health care benefit program or those made to beneficiaries who are defrauded into claiming benefits. In addition, Defendants "and others" would enroll in health insurance plans specifically to obtain benefits to pay for Defendants' marketed medications in order to further profit from the scheme.

Despite the aforementioned allegations, Defendants assert, "[t]he Indictment fails to allege <u>in any manner</u> how the defendants misrepresented anything or misled anyone in order to deceive." [Doc. 175 at ¶ 17 (emphasis in original)]. The Court disagrees. As the referenced allegations show, that assertion is patently wrong. The aforementioned actions were allegedly fraudulent as well as "knowingly and intentionally" committed to defraud or otherwise obtain money from a "health care benefits program." Thus, the indictment *does* allege that Defendants misrepresented facts. More importantly, the allegations fairly put Defendants on notice as to the substance of the Government's accusations.

Contrary to Defendants' claim that the Third Superseding Indictment fails to sufficiently plead that they committed health care fraud, the Court finds that the indictment *does* sufficiently allege health care fraud. Accordingly, Defendants Joint Motion to Dismiss [Doc. 175] is hereby **DENIED** in that regard.

Further, Defendants argue that the reasoning above warrants dismissal of the counts related to conspiracy to commit health care fraud. [Doc. 175 at ¶ 30]. Defendants'

-6-
Case 1:18-cr-00011-HSM-CHS   Document 242   Filed 09/09/19   Page 6 of 20   PageID #: 1284

joint motion to dismiss the conspiracy to commit health care fraud claims on this basis is also **DENIED** for the reasons already stated. *See, e.g., United States v. Superior Growers*, 982 F.2d 173, 176 (6th Cir. 1992) ("'an indictment for conspiring to commit an offense' [need not] 'allege with technical precision the elements essential to the commission of the offense which is the object of the conspiracy'" because "the essence of conspiracy is an agreement to commit and illegal act, not its accomplishment" (quoting *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir. 1985))).

### b. Duplicity

After reviewing the indictment, the Court raised *sua sponte* the issue of whether the healthcare fraud counts were duplicitous. [*See* Doc. 200]; *see, e.g., United States v. Savoires*, 430 F.3d 376, 381 (6th Cir. 2005) (holding that it was plain error not to address a duplicitous count in an indictment). At a hearing on the pending motions on August 12, 2019, Defendants moved to dismiss the indictment on this basis, and Defendants further argued the wire and mail fraud claims likewise should be dismissed without the foundation of the duplicitous healthcare fraud counts.

Title 18 United States Code Section 1347 makes it a crime for one to "*execute[], or attempt[] to execute*, a scheme or artifice ..." to "defraud" or "obtain ... money or property" from a "any health care benefit program ... in connection with the delivery of or payment of health care benefits." It is the execution of a health care fraud scheme, then, that is a crime under the statute. A scheme unexecuted does not amount to a crime. A single "scheme" can, of course, have multiple executions, and in those situations the Government may charge each execution as a separate count of health care fraud.

The Government's Third Superseding Indictment charges Defendants each with a singular substantive count of health care fraud. The indictment alleges Defendants

generally "executed" their scheme in at least ten distinct ways, and that is purportedly not even an exhaustive list. The Government "concedes" that, of these various methods of execution, "the Third Superseding Indictment ... does not specify 'which execution of the scheme will be used'" in its prosecution. [Doc. 207 at 8]. The Government as a result has charged each of the five Defendants with broadly executing the alleged scheme in one of at least ten ways at various times during a period of many years without "singling out one particular claim as the one for which liability will be imposed." *United States v. Kirkham*, 129 F. App'x 61, 69 (5th Cir. 2005). The Third Superseding Indictment is necessarily duplicitous as a result. *Id*. The question, then, is how such duplicity should be remedied. Defendants argue that the indictment should be dismissed. The Government claims that the duplicity can be cured through a jury instruction.

"The overall vice of duplicity is that the jury cannot in a general verdict render its findings on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988). The resulting "primary concern" regarding a duplicitous indictment "is that a defendant may be deprived of his right to a unanimous jury verdict." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (citing *Savoires*, 430 F.3d at 380). "That is, a jury might return a guilty verdict on the single count submitted to them without all twelve jurors agreeing that the defendant committed either of the offenses charged within that count." *Id*. "Other adverse effects on a defendant 'may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, [and] in exposure to double jeopardy.'" *Id*. (quoting *Duncan*, 850 F.2d at 1108 n.4).

Federal Rule of Criminal Procedure 7(c) holds, however, that the prosecution in a single count "may allege ... that the defendant committed [the offense] by one or more specified means." Nor is dismissal the only cure for a duplicitous indictment. *United States v. McCafferty*, No. 1:10CR387, 2011 WL 933771, at *10 (N.D. Ohio Mar. 16, 2011). Dismissal often "is not the proper remedy," *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981), particularly "when a less drastic ruling will suffice." *United States v. Goodman*, 285 F.2d 378, 380 (5th Cir. 1960). Typically, a "[p]roper jury instruction can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *Kakos*, 483 F.3d at 443.

The Court finds the duplicitous counts are remediable without dismissal. A better solution is a careful jury instruction and potentially issuing a "special verdict form[]" or interrogatory to ensure that the jury's vote, whether finding guilt or acquittal, is unanimous as to the facts regarding the particular count in question. *McCafferty*, 2011 WL 933771, at *10.

### 2. Illegal Remuneration Counts and Multiplicity Arguments

Defendants next claim that the Third Superseding Indictment's counts for paying or receiving illegal remunerations, brought under 42 U.S.C. § 1320a-7b(b)(1) and (2), are multiplicitous with the health care fraud counts, that the allegations are "immaterial," and that the operative indictment does not allege that Defendants had sufficient control of the "patient referral stream" to violate the statute.

#### a. Multiplicity

Defendants claim that because the illegal remuneration counts and health care fraud claims can both be based on misrepresentations regarding kickbacks, multiplicity

-9-
Case 1:18-cr-00011-HSM-CHS   Document 242   Filed 09/09/19   Page 9 of 20   PageID #: 1287

Federal Rule of Criminal Procedure 7(c) holds, however, that the prosecution in a single count "may allege ... that the defendant committed [the offense] by one or more specified means." Nor is dismissal the only cure for a duplicitous indictment. *United States v. McCafferty*, No. 1:10CR387, 2011 WL 933771, at *10 (N.D. Ohio Mar. 16, 2011). Dismissal often "is not the proper remedy," *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981), particularly "when a less drastic ruling will suffice." *United States v. Goodman*, 285 F.2d 378, 380 (5th Cir. 1960). Typically, a "[p]roper jury instruction can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." *Kakos*, 483 F.3d at 443.

The Court finds the duplicitous counts are remediable without dismissal. A better solution is a careful jury instruction and potentially issuing a "special verdict form[]" or interrogatory to ensure that the jury's vote, whether finding guilt or acquittal, is unanimous as to the facts regarding the particular count in question. *McCafferty*, 2011 WL 933771, at *10.

### 2. Illegal Remuneration Counts and Multiplicity Arguments

Defendants next claim that the Third Superseding Indictment's counts for paying or receiving illegal remunerations, brought under 42 U.S.C. § 1320a-7b(b)(1) and (2), are multiplicitous with the health care fraud counts, that the allegations are "immaterial," and that the operative indictment does not allege that Defendants had sufficient control of the "patient referral stream" to violate the statute.

#### a. Multiplicity

Defendants claim that because the illegal remuneration counts and health care fraud claims can both be based on misrepresentations regarding kickbacks, multiplicity

results when a health care fraud claim and illegal remuneration claim rely on the same conduct. [Docs. 175 ¶¶ 31–34, 196]. Although it is unclear on which execution of the alleged scheme the Government is proceeding, *see supra*, the indictment does allege that Defendants were "concealing" that they were "receiving a commission based upon a percentage of the amount that the pharmacy was able to bill the health insurance provider or TRICARE for such prescriptions." [Doc. 131 ¶ 11]. If the Government's health care fraud counts are based on this conduct, which also is being prosecuted as illegal remuneration, Defendants are correct the counts are multiplicitous. *See United States v. Ogba*, 526 F.3d 214, 233 n.42 (5th Cir. 2008) (holding "if [defendant's] healthcare fraud conviction were based entirely on proof of his receipt of kickbacks, which he did dishonestly, then a conviction for illegal remuneration is a lesser included offense of healthcare fraud").

However, the Government has alleged facts beyond misrepresentations regarding kickbacks, and it can pursue the health care fraud claims without reliance on conduct related to "concealing" the alleged kickbacks. This would cure any multiplicity. *See Ogba*, 526 F.3d at 235 ("if a jury convicted [defendant] on other types of fraud, unrelated to illegal remuneration, and the court sentenced [defendant] based on that conviction, there is no double jeopardy").

But in any event, even if these claims were multiplicitous, it does not require the dismissal of the indictment. The Government may submit a multiplicitous indictment to the trier of fact. *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005). If a defendant is convicted on two multiplicitous counts, the Court is instructed to "enter judgment on only one count" at sentencing. *United States v. York*, No. 94-3655, 59 F.3d 172 (Table), 1995 WL 369319, at *3 (6th Cir. 1995) (citing *Ball v. United States*, 470 U.S. 856, 865 (1985)). Indeed, that is the preferred remedy. *See United States v. Throneburg*,

-10-
Case 1:18-cr-00011-HSM-CHS    Document 242    Filed 09/09/19    Page 10 of 20    PageID #: 1288

921 F.2d 654, 657 (6th Cir. 1990) ("the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions"). Accordingly, Defendants' joint motion on this issue, [Doc. 175], and Motion to Dismiss Illegal Remuneration Counts, [Doc. 196], is hereby **DENIED**.

### b. Materiality

Next, relying on False Claim Act cases, Defendants argue that the indictment fails to allege that misrepresentations related to the kickbacks were "material." [Doc. 175 ¶ 39]. But when materiality is an element of a crime, the indictment need not specifically allege materiality if the "concept of materiality" is encompassed by the indictment." *United States v. Lazar*, No. 04-20017-DV, 2005 WL 8157021, at *3 (W.D. Tenn. Mar. 15, 2005) (quoting *United States v. Cooper*, 283 F. Supp. 2d 1215 (D. Kan. 2003)), *report and recommendation adopted*, No. 04-20017-DV, 2005 WL 8157025. Regardless, the Court finds that materiality is not even an element of the Anti-Kickback Statute charges.

As mentioned, Defendants rely entirely upon False Claims Act cases regarding kickbacks paid or received in relation to Medicare and Medicaid claims. [Doc. 175, at 38]. The question in those cases is whether or not an alleged misrepresentation or omission regarding the kickbacks are "material" to the government's payment of benefits. The Anti-Kickback Statute, by contrast, makes it a crime to pay or receive a kickback even if done "overtly." 42 U.S.C. § 1320a-7b(b). In other words, a person is criminally liable under that statute if he even receives or pays a kickback and truthfully advertises it to the world (i.e., no misrepresentation). *See id.* The act of paying or receiving a kickback is a crime, no misrepresentation needed. *Id.* Given that, it is unclear as to *what* must be "material," and the Court therefore finds that Defendants' reliance on False Claims Act cases is misplaced.

### c. Control

Defendants next argue that they lacked "functional control" of the "patient referral stream" because they are not healthcare providers or pharmacists. If they allegedly paid or received a kickback, they argue, it was not as a result of "referring an individual."

A defendant need not be a physician or other healthcare provider to violate the Anti-Kickback Statute. *United States v. Vernon*, 723 F.3d 1234, 1254 (11th Cir. 2013). To the extent Defendants argue that they had no *de facto* control over the "patient referral stream," the Court finds that argument relates to factual issues and is thus not properly considered on a motion to dismiss an indictment. The Third Superseding Indictment alleges that Defendants willfully received or paid kickbacks for referring patients. Whether this is true is currently irrelevant. The indictment further lists the dates from which these alleged particular kickbacks occurred. The Court finds these allegations give Defendants notice of the Government's accusations, and are therefore sufficiently pled. Accordingly, the Joint Motion to Dismiss the illegal remuneration counts is **DENIED**.

### 3. Wire and Mail Fraud Counts

Defendants next argue that the indictment insufficiently alleges wire and mail fraud because it does not plead facts showing if or how Defendants "literally 'caused' the fraudulent" mailing or transmission. [Doc. 175 ¶ 62]. Defendants further argue that the indictment does not sufficiently allege intent or knowledge. [*Id.* ¶¶ 64–66, 68]. The Court finds, however, that the Third Superseding Indictment does track the statutory language and otherwise recites the necessary elements of mail and wire fraud (including the relevant *mens rea*),[1] and includes particulars and lists the alleged mailings and

---

[1] The Court finds that even if the indictment omitted the *mens rea*, that is not a defect that warrants dismissal. *See, e.g.*, *United States v. Evans*, 892 F.3d 692 (5th Cir. 2018)

transmissions, their substance, and the dates they occurred. Accordingly, the Court finds the indictment sufficiently pleads wire and mail fraud. The Joint Motion to Dismiss the mail and wire fraud charges on these grounds is **DENIED**.

### 4. Money Laundering

In Defendants' Joint Motion to Dismiss, they argue that because they "did not participate in a scheme to defraud and therefore were never engaged in any illegal activity" they did not commit the crime of money laundering. [Doc. 175 at ¶ 71]. This argument frames the issue as a factual dispute (i.e., essentially Defendants claim "we did not do it"). As observed previously, this is improper in a motion to dismiss an indictment. To the extent Defendants argue that the failure to sufficiently allege the underlying crimes of health care fraud, *etc.*, requires dismissal of the money laundering count, the argument currently lacks foundation because the Court has found that those claims are sufficiently pled. The motion to dismiss on this basis is likewise **DENIED**.

### 5. Count 178 – Conspiracy to Commit Money Laundering

Defendants Billy Hindmon and Jayson Montgomery seek to dismiss Count 178. [Doc. 171]. That count alleges Defendants Hindmon and Montgomery "willfully and knowingly combine[d], conspire[d], and confederate[d] and agree[d] with each other and others … to commit offenses against the United States, that is, to …" launder money, as defined by 18 U.S.C. § 1956(a)(1), to conduct mail fraud, wire fraud, and health care fraud. [Doc. 131, at 30]. For this count, the Government includes further particulars and generally describes the actions constituting the offense. [*Id.* at 30–33]. Defendants

---

(holding that a defendant's argument that an indictment was insufficient in charging mail fraud when it did not specifically allege intent "fail[ed] straight out of the gate" because "intent 'need not be specifically charged in the indictment'").

Hindmon and Montgomery argue this charge is insufficiently pled, that the indictment fails to establish venue, and that the count is multiplicitous. [Doc. 171 at 1].

First, the indictment sufficiently alleges conspiracy to commit money laundering in Count 178 because it tracks the relevant statutory language and the elements of the offense and substantive offense. Defendants argue that this is not true because the Government does not allege under "the promotion prong of § 1956(a)(1)" that the "money was obtained from illegal activity and was conducted with the specific intent to promote the carrying on of the health care fraud." [*Id.* at 3]. Defendants further claim the Government has failed to allege the source of the money used to purchase the money orders (the alleged instrumentality of the money laundering) was related to the substantive crimes alleged. [*Id.*]. Defendants arguments are misplaced.

When an indictment alleges conspiracy, it is "not necessary to describe the substantive offense which is the object of the conspiracy with the particularity required in an indictment for that offense." *United States v. De Sapio*, 299 F. Supp. 436, 445 (S.D.N.Y. 1969) (applying 18 U.S.C. § 371). The Third Superseding Indictment tracks the statutory language and required elements for a conspiracy pursuant to § 371 and it includes particulars of the offense and cites relevant overt acts. It also tracks the language of the substantive offense of money laundering. Count 178 is therefore sufficiently pled.

Defendants argue Count 178 for conspiracy to commit money laundering is multiplicitous, but the operative indictment does not charge them with the underlying crime of money laundering.[2] In any event, if money laundering were charged in addition to the alleged conspiracy, there would be no issue. "It is elementary that a conspiracy may

---

[2] Only Defendants Wilkerson and Chatfield were charged with substantive money laundering. [*See* Doc. 131 ¶¶ 28-29].

-14-
Case 1:18-cr-00011-HSM-CHS   Document 242   Filed 09/09/19   Page 14 of 20   PageID #: 1292

exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *Salina v. United States*, 522 U.S. 52, 65 (1997); *United States v. Myers*, 854 F.3d 341, (6th Cir. 2017).

It seems that Defendants argue that the count is multiplicitous because it allegedly involved "proceeds" from the health care fraud and wire and mail fraud counts. The Court disagrees. *See Myers*, 854 F.3d at 356 (holding conspiracy to launder money and a conspiracy pursuant to § 371 to transport stolen vehicles in interstate commerce were not duplicitous). It is settled law that conspiracy generally (and § 371 specifically) can be charged alongside substantively related crimes. *See id.*

In addition to this argument, Defendants also argued at the August 12th hearing that the conspiracy in Count 178 is multiplicitous with the overall healthcare fraud conspiracy. This argument is colorable, *see, e.g., United States v. Meda*, 812 F.3d 502, 508 (6th Cir. 2015), but it appeared the Government did not have an opportunity to prepare and respond to the specific argument in an informed manner. Due to this and the fact that multiplictous counts are best remedied at sentencing (*see Throneburg*, 921 F.3d at 657) the Court defers ruling on the merits of that argument now.

Defendants' venue arguments fail. Defendants cite the money laundering conspiracy statute to argue that venue is not proper in the Eastern District of Tennessee. Even if that were the correct venue statute, which it is not, venue would be proper here because venue for an alleged conspiracy is proper wherever overt acts in furtherance of a conspiracy are committed. *Myers*, 854 F.3d at 354 (applying 18 U.S.C. § 1956(i)(2)). That general rule regarding conspiracy applies to Defendants' charges under § 371. *See id.*; *see also United States v. Scott*, 37 F.3d 1564, 1580 (10th Cir. 1994) (applying the general rule

-15-
Case 1:18-cr-00011-HSM-CHS   Document 242   Filed 09/09/19   Page 15 of 20   PageID #: 1293

to a § 371 case). As such, the Court finds venue for Count 178 (as alleged) is proper here. Accordingly, Defendants' Motion to Dismiss Count 178 is **DENIED**.

## B. Defendants' Motions to Strike

In addition to their motions to dismiss, Defendants filed a Motion to Strike the Third Superseding Indictment. [Doc. 165]. Therein, Defendants seek to strike language regarding the purposes of compounded medicines and "scare quotes." [*See id.*].

The indictment contains a definition of compounding pharmacies that Defendants argue contains partially superfluous and prejudicial instructions. The entirety of the definition, with the portion sought to be struck in italics, reads as follows:

> "Compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. "Compounding pharmacies" are businesses that specialize in creating compounded medications. *Compounded drugs may be prescribed when other available drugs do not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an otherwise available medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. As another example, compounded drugs may also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow a pill and needs the drug in a liquid form that is not otherwise available.*

Defendants argue that the latter part of this definition is superfluous and prejudicial. The Court finds it is neither.

Listing the purpose and examples of uses for compounding pharmacies is not irrelevant. The Government alleges Defendants engaged in selling unnecessary medications. Giving examples of necessary uses of compounding drugs is unquestionably relevant. Defendants argue, however, that the portions are prejudicial because there are other uses for compounding drugs not mentioned in the indictment. Defendants claim,

for instance, that compounded drugs can be used when there is a drug shortage or to add flavor to "liquid medication for children." [Doc. 166 at 3].

True that may be, but listing some examples of the uses of compounded drugs and not others is not prejudicial to Defendants. At trial, Defendants will be permitted to present other legitimate uses for compounded drugs, and the trier of fact will be instructed that the indictment is not proof, much less exclusive proof. Further, the indictment notes that the listed examples are just that, examples. The definition does not purport to be exhaustive. Accordingly, as to the first motion to strike, [Doc. 165], this portion is **DENIED in part**.

Defendants also seek to strike quotation marks around certain language in the Third Superseding Indictment. In the second paragraph of the indictment, the Government alleges that Defendants "sometimes informed the customers that they would be compensated for participating in a 'study,' 'trial,' or an 'evaluation' regarding the medications." [Doc. 131 ¶ 2]. Defendants assert the quotation marks around study, trial, and evaluation are scare or sneer quotes. [Doc. 166, at 5]. The Government concedes that while removing other quotation marks in the indictment it inadvertently "missed these quotes" but had otherwise intended to remove them. [Doc. 179, at 6].

Nonetheless, the Government maintains the aforementioned quotes are not scare or sneer quotes. [*Id.*]. The Court finds given that their presence is an admitted mistake, whether or not the quotes are actually sneer or scare quotes is irrelevant. The quotation marks around these words will be struck from the indictment. Accordingly, Defendants' motion to strike the Third Superseding Indictment, [Doc. 165], on this ground will be **GRANTED in part**, and the Government is **ORDERED** to file an Amended Third Superseding Indictment with the relevant quotation marks omitted.

Finally, in their Amended Joint Motion to Strike, [Doc. 176], Defendants argue that some counts related to illegal remunerations contain superfluous information because it lists transactions alleged as representing "a portion of which" was attributable to actionable kickbacks related to TRICARE along with other amounts not subject to the Anti-Kickback statute. Defendants claim this is "inaccurate, and unnecessarily prejudicial." [*Id.* ¶ 10]. The Court finds these allegations are not inaccurate since it accurately alleges that only "a portion" of the pled transactions are attributable to a "Federal health care program." Further, it is not enough for an allegation to be prejudicial. It has to be *both* irrelevant *and* prejudicial. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974) (holding motions to strike are only proper "when an indictment contains nonessential allegations that could prejudicially impress the jurors").

Generally, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant). *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) And "[t]he concept of relevancy within an indictment is broad." *United States v. Paulus*, No. 0:15-CR-15-DLB-EBA-1, 2015 WL 13735785, at *3 (E.D. Ky. Nov. 25, 2015). Allegations need only be "generally relevant to the overall scheme charged in the indictment." *Id.* Including "background" information falls within the scope of relevancy under this standard. *Id.*

Accordingly, the Court finds the indictment listing entire transactions, including nonactionable amounts, is relevant and thus cannot be stricken even if prejudicial. It is important to remember that the "showing required under Rule 7 'is a rather exacting standard, and only rarely has surplusage been ordered stricken.'" *United States v. Davis*,

714 F. Supp. 853, 866 (S.D. Ohio 1988). Accordingly, Defendants Amended Joint Motion to Strike [Doc. 176] is **DENIED**.

### C. Joint Motion for Bill of Particulars

A bill of particulars serves to "inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense" when the existing indictment is too vague to suffice. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). As discussed above, the Court has concluded that the indictment sufficiently apprises Defendants of the charges against them and the conduct upon which those charges are based. Accordingly, a bill of particulars is not warranted. The Joint Motion for Bill of Particulars, [Doc. 167], is hereby **DENIED**.

## II. CONCLUSIONS

Accordingly, and for the reasons discussed herein:

- Defendants' Amended Joint Motion to Dismiss, [Doc. 175], is hereby **DENIED**;
- Defendants' Joint Motion to Dismiss Illegal Remuneration Counts, [Doc. 196], is likewise **DENIED**;
- Defendants' Amended Joint Motion to Dismiss Count 178, [Doc. 171], is **DENIED**;
- Defendants' Joint Motion to Strike Surplusage from the Third Superseding Indictment, [Doc. 165], is **DENIED in part and GRANTED in part**; the Government is **ORDERED** to file an Amended Third Superseding Indictment according to the instructions herein;
- Defendants' Amended Joint Motion to Strike, [Doc. 176], is **DENIED**;

- Defendants' Joint Motion for Bill of Particulars, [Doc. 167], is hereby **DENIED**; and

- The motions in limine, [Docs. 95, 96, 97, 107, 117, 161, 162, 163, 169, 170, 171, 172, 173], are hereby **DENIED WITHOUT PREJUDICE and with leave to refile at an appropriate time**.

**SO ORDERED** this 9th day of September, 2019.

                                                             */s/Harry S. Mattice, Jr.*
                                                         HARRY S. MATTICE, JR.
                                                   UNITED STATES DISTRICT JUDGE