UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:18-cr-11 |
| v. ) | |
| ) | Judge Mattice/Steger |
| JERRY WAYNE WILKERSON, ) | |
| MICHAEL CHATFIELD, ) | |
| KASEY NICHOLSON, ) | |
| BILLY HINDMON, and ) | |
| JAYSON MONTGOMERY ) | |

### GOVERNMENT'S MEMORANDUM REGARDING LEGAL STANDARDS

COMES NOW the United States of America by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Perry H. Piper and Franklin P. Clark, Assistant United States Attorneys, and offers these legal standards/elements of the offenses.

The Court has set forth proposed standards (forwarded to the parties via email on November 18, 2019) and the defendants jointly have proposed others. (R. 358.) This memo offers the government's proposed standards and will also address the defendants' suggested standards.

### Aiding and Abetting

All of the defendants are charged with Aiding and Abetting, in addition to the substantive offenses, in Counts 2 through 177. The government requests the Aiding and Abetting instruction (as modified to fit the facts of the Indictment) found at Sixth Circuit Pattern Instruction 4.01.

(1) For you to find any defendant guilty of the charges in Counts 2 through 177, it is not necessary for you to find that each defendant personally committed the crime in which he or she is named. You may also find that defendant guilty if he or she intentionally helped or encouraged someone else to commit the crime. A person who does this is called an aider and abettor.

(2) But for you to find any defendant guilty of any crime in Counts 2 through 177 as an aider and abettor, you must be convinced that the government has proven each and every one of the following elements beyond a reasonable doubt:

(A) First, that the crime of wire fraud was committed in Counts 2 through 108; mail fraud in Counts 109 through 134; health care fraud in Counts 135-140; payment of illegal remuneration in Counts 141, 143 through 156; receipt of illegal remuneration in Counts 157 through 159, 161 through 167; aggravated identity theft in Counts 168 through 171; and money laundering in Counts 172 through 177.

(B) Second, that the defendant named in the respective count helped to commit the crime or encouraged someone else to commit the crime.

(C) And third, that the defendant intended to help commit or encourage the crime.

(3) Proof that the defendant may have known about the crime, even if he or she was there when it was committed, is not enough for you to find him or her guilty. You can consider this in deciding whether the government has proved that he or she was an aider and abettor, but without more it is not enough.

(4) What the government must prove is that each defendant in his or her respective count did something to help or encourage the crime with the intent that the crime be committed.

(5) If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you cannot find any defendant (in his or her respective counts) guilty of the crimes listed in Counts 2 through 177 as an aider and abettor.

## Good Faith

The defendants, in their joint memorandum, have sought a good faith instruction with respect to all counts in the Third Superseding Indictment. (R. 358, PageID # 4005-06.) The law is settled that the good faith instruction should be given if there is any evidence at all to support the charge. *United States v. McGuire*, 744 F.2d 1197, 1201 (6th Cir. 1984); see also, Committee Commentary Instruction 10.04

(https://www.ca6.uscourts.gov/sites/ca6/files/documents/pattern_jury/pdf/Chapter%2010_0.pdf at page 30, last visited on November 25, 2019).

The government is unsure at this stage as to what actions by the defendants the "good faith" instruction would apply to. The defendants have made much of their "reliance on advice of counsel" through their opening statements, questions directed at witnesses called by the government on cross examination, and partly through the testimony of defense witness Brian Kurtz. However, in order to prevail on good faith based upon advice of counsel, the defendants must show "(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice." *United States v. Bruner*, No. 5:14-CR-5-KKC, 2014 WL 2921840, at *1 (E.D. Ky. June 27, 2014), aff'd, 616 F. App'x 841 (6th Cir. 2015) (citing *United States v. Lindo*, 18 F.3d, 353, 356 (6th Cir. 1994)). "[A] defendant who identifies any evidence supporting the conclusion that he or she has fully disclosed all pertinent facts to counsel, and that he or she has relied in good faith on counsel's advice, is entitled to a reliance jury instruction." *Id*. "It is well established than an [advice of counsel] instruction should not be given if it lacks evidentiary support or if it's based on mere suspicion or speculation." *Id*.

The defendants have offered no evidence that they fully disclosed all pertinent facts to counsel, and in fact, when the government attempted to elicit such information from witness Adam Staten, that line of inquiry was met with vigorous objection. On the other hand, the proof showed that the defendants misrepresented material facts (paying co-pays and paying for a non-existent study to name but two). Defendants likewise seem to be suggesting that the Pharmacy Benefits Managers (Express Scripts or CVS/Caremark) were in agreement with the scheme, therefore they did not commit any fraud. In essence, the defendants are arguing that they "had permission" or at least acquiescence, to defraud the insurance companies. If that is the case, the defendants are "not mounting a good faith defense"; they are asserting "merely a plea of not guilty." *United States v. Warren*, 782 F. App'x 466, 474 (6th Cir. 2019) (citing *United States v.*

*Wall*, 130 F.3d 739, 746-47 (6th Cir. 1997) and *United States v. Williams*, 728 F.2d 1402, 1405 (11th Cir. 1984)).

Other than advice of counsel serving as a basis for good faith, the defendants have not identified any other factors supporting the instruction. Defendant Chatfield has suggested, through cross-examination, that he was youthful at the time of the offense. As counsel for the government recalls, other defendants (most notably Jayson Montgomery) suggested in opening that they relied on the representations of defendant Wilkerson. That line of defense was never developed at trial, however. As the Sixth Circuit has recognized, it is "well established that an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (citing *United States v. James*, 819 F.2d 674, 675 (6th Cir. 1987) and *United States v. McLister*, 608 F.2d 785, 791 (9th Cir. 1979)). "In a case addressing whether a taxpayer-defendant was entitled to an instruction regarding his good faith reliance on his accountant, however," the Sixth Circuit noted that "the standard of evidence necessary to warrant an instruction cannot include an absolute requirement that the [defendant] must testify, for that would burden the [defendant]'s own Fifth Amendment right against self-incrimination." *Lindo*, 18 F.3d at 356.

The defendants, other than the assertion in their brief that they "have demonstrated through witness testimony that they were acting in good faith," have not presented any proof for the good faith standard. The government assumes that the proof presented through "witness testimony" amounted to defense counsel asking patients if they believed *they* had done anything wrong. Such an assertion does not provide a good faith basis for the defendants who are committing the fraud. Given the low bar for a good faith instruction, the Court may find it appropriate to apply that standard. However, the government submits that the inclusion of the good faith standard is tenuous given the proof.

It is also questionable whether the good faith instruction should apply to a *conspiracy* to commit fraud. In *United States v. Smith*, 600 F. App'x 991, 995–96 (6th Cir. 2015), the trial court denied the defendant's request for the instruction in a fraud conspiracy, reasoning "that good faith is actually a defense to the substantive fraud offense, which was not charged, and therefore the instruction would confuse the jury." *Id.* at 995. In affirming the trial court, the Sixth Circuit stated "the instructions the court did give incorporated the substance of a good faith defense." The district court instructed the jury, "[t]o convict a defendant, the government must prove that she knew the conspiracy's main purpose, and that she knowingly and voluntarily joined it intending to help advance or achieve its goals." *Id.* Of course, there are substantive fraud charges in this case, and the government has no concerns about confusing the "trier of fact" as this is a bench trial. Accordingly, if the Court determines that the good faith instruction applies to the other fraud counts, the government has no objection to the Court considering that standard for Count 1, the health care fraud conspiracy, and giving whatever weight to the good faith instruction the Court deems appropriate.

## Good Faith as Applied to Other Offenses

The government submits that the good faith instruction does not, as a matter of law, apply to the illegal remuneration counts, the aggravated identity theft charges, or the money laundering crimes (payment of illegal remuneration in Counts 141, 143 through 156; receipt of illegal remuneration in Counts 157 through 159, 161 through 167; aggravated identity theft in Counts 168 through 171; and money laundering in Counts 172 through 177). The Court's pattern instructions, 6.08 Fraud – Good Faith Defense, and the Committee Commentary to § 6.08, states that a good faith defense [is] to be used in conjunction with the elements instructions for mail, wire and bank fraud *only*; it does not articulate a general good faith defense. (Emphasis added.)[1]

---

[1] Counsel for the government assumes that the good faith instruction also applies to health care fraud, even though that crime is not enumerated in § 6.08 and the commentary. In *United States v. Wilhoite*, No. 16-6581, 2017 U.S.

The counts listed above— illegal remuneration, aggravated identity theft, and money laundering—are not fraud charges, therefore good faith would not apply. In *United States v. Wilhoite*, No. 16-6581, 2017 U.S. App. LEXIS 28003, *5 (6th Cir. 2017), the Sixth Circuit agreed that the district court should not have given a good faith instruction for a violation of 18 U.S.C. § 1014 (making a false statement to a bank), noting that the pattern instructions limited the good faith instruction to mail fraud, wire fraud, bank fraud, and health-care fraud only. *Id*. In fact, a violation of 18 U.S.C. § 1014 is more of a "fraud type" crime than that found in the illegal remuneration counts or the aggravated identity theft charges.

As the Court has noted, the elements for a kickback count (either payment or receipt) do not include fraud. Following are the elements suggested by the Court for payment of a kickback. The elements for receipt are similar.

> 1. The defendant knowingly and willfully offered or paid remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to induce a person to:
>     a. Refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or part under a Federal health care program, or
>     b. Purchase, lease, order, or arrange or recommend such for any good, facility, service, or item for which payment may be made in whole or part under a Federal health care program.

Nothing in these elements reveals that the defendants need commit fraud or have a fraudulent intent. As the government has argued before, the defendants could have informed all parties that they were paying or receiving kickbacks; if the kickback was offered or solicited, or paid or received, the defendants would have still committed a violation under 42 U.S.C. Sections 1320a-7b(b)(1) and (2). Therefore, the defendants' "good faith" in the illegal remuneration arena is irrelevant.

---

App. LEXIS 28003, *5 (6th Cir. 2017), the Court suggests that the good faith instruction applies to health care fraud cases.

Regarding the aggravated identity theft counts (which relate only to defendant Chatfield), the defendants have put forth no proof warranting a good faith instruction or standard. It is Chatfield's contention that he did not use the identities of George Foster, or Hal, Susanne or Emma Bowling without permission. Debbie Foster, the wife of George, stated that she did not give anyone permission to use her or her husband's name. Natalie Chatfield, defendant Chatfield's wife, was called by the defense and testified that her mother (Debbie) gave her permission to order creams for Debbie and George Foster. Likewise, Noah Bowling testified that he completed the forms for his parents and sister (Hal, Susanne and Emma Bowling) on the hood of a car at Finley Stadium. Noah Bowling stated that he and his brother "filled out the forms in Michael Chatfield's presence. He was present. He was present when we filled out the whole form and when we filled out the forms we signed each name." Chatfield called his brother, Brandon, and his then girlfriend (now wife), to testify that Luke had delivered the three forms for Hal, Susanne and Emma Bowling at the Hamilton Place Mall the next day. Neither of these scenarios presents a "good faith" argument. Defendant Chatfield is claiming that he had permission to sign the names, or at least did not know that the Bowlings had forged the signatures of their parents and sisters. Chatfield is not arguing that he had a "good faith" belief that he could sign up customers for creams without their knowledge; he's arguing that did not happen. This is not a good faith issue.

## Material Omission and Duty to Disclose

The defendants also argue that they, as marketers, had no duty to disclose to the PBMs or insurance companies, therefore an "omission" or "concealment" by them cannot form the basis for any fraud counts. (R. 358, PageID# 4006.) In making this claim, the defendants rely on *United States v. Maddux*, 917 F.3d 437, 443-446 (6th Cir. 2019), the "fair reading" of the cases in the notes to the Sixth Circuit Pattern Jury Instructions, and the Third Circuit's pattern

instructions. There are concerns with the defendants' premise that their actions did not constitute actionable fraud.

First, it is undisputed that the pharmacies would have had a duty to disclose to the PBMs and/or insurance companies that the defendants were making co-pays and were inducing patients by paying them for a non-existent study. The defendants, by committing these actions, were causing the pharmacies not to disclose these facts to the victims. Second, the act of paying the co-pays and the inducement fee through a non-existent study are not merely "omissions." They are affirmative acts committed by the defendants which constitute fraud. The defendants seek to avoid culpability by mischaracterizing their acts as "omissions" or "concealments." These actions are neither: they are affirmative misrepresentations designed to deceive the victim insurance companies.

In *United States v. Crossley*, 224 F.3d 847 (6th Cir. 2000), the defendants were approached by an insider, an insurance adjuster, in a strategy that involved filing false claims in the name of false clients and then sharing the profits after the false client cashed the insurance check. *Crossley*, 224 F.3d at 857. The only involvement by the defendants was to give the insider their names and mailing addresses and then to cash the checks. In analyzing the sufficiency of the evidence presented on the mail fraud count, the Sixth Circuit found that a rational juror examining the evidence presented at trial could have concluded that a defendant knowingly participated in a scheme to defraud when it would have been obvious to the defendant that she was not entitled to money. *Crossley*, 224 F.3d at 857.

If the actions by the defendants are omissions, the omission of a material fact with the intent to get the victim to take an action he would not otherwise have taken establishes intent to defraud under the wire fraud statute. *United States v. Bertram*, 900 F.3d 743, 748–49 (6th Cir. 2018), cert. denied, 139 S. Ct. 852, 202 L. Ed. 2d 582 (2019) (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). As noted previously, the indictment charges the defendants

with substantive fraud counts and also with aiding and abetting such violations—which allows for punishment as a principal. See 18 U.S.C. § 2. The defendants' actions violate the fraud statutes "if some other party has committed [fraud], if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation." *United States v. Faulkenberry*, 614 F.3d 573, 583–84 (6th Cir. 2010). The defendants either had the assistance of the pharmacies in committing the fraud, or the defendants were deceiving the pharmacies by failing to inform them that they were paying co-pays for the patients and were giving an inducement to order the compounded medications through the guise of a non-existent study. Even if the defendants want to couch their actions as "omissions" or "concealments," they either deceived the pharmacies who in turn, based upon the defendants misrepresentations, deceived the PBMs, or the defendants had the assistance of the pharmacies who were deceiving the PBMs. Couched in terms of "duty" to disclose, the defendants would have had the duty to disclose their actions to the pharmacies, or they caused the pharmacies to fail to disclose the material facts to the PBMs (with whom the pharmacies would have had a duty).

Any contention that the defendants cannot be held culpable for their actions in deceiving the insurance companies would lead to absurd results. For example, Matthew Perkins (the yeoman aboard the U.S.S. George H. W. Bush) testified that defendant Nicholson boasted to him that she had paid $10,000 and a year's worth of insurance premiums for a friend because she could make more than that off of creams ordered for the friend. If the defendants' theory is correct, these actions by Nicholson would be "omissions" or "concealments" which she would not have any obligation or duty to disclose. Therefore, Nicholson (or any of the defendants) could have paid the insurance premiums and given a $10,000 inducement to any unscrupulous individual, but no criminal liability would attach to such actions because Nicholson would not have had a "duty" to report to the insurance companies that she was taking these actions. In

*United States v. Cotton*, 231 F.3d 890, 898 (4th Cir. 2000), the court held that "even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent[] the other [party] from acquiring material information.'" (quoting Restatement (Second) of Torts § 550 (1977)). This language mirrors the Sixth Circuit's admonition that a "scheme to defraud" is not constrained by a technical definition, but, instead, the "standard is a 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society.'" *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir. 1979) (quoting *United States v. Bruce*, 488 F.2d 1224, 1229 (5th Cir. 1973)); *see also*, *United States v. Frost*, 125 F.3d 346, 371 (6th Cir. 1997) (approving jury instruction that "a scheme or artifice to defraud may describe a departure from fundamental honesty, moral uprightness, or fair play and candid business dealings in the general life of the community. There must be proof of either a misrepresentation, false statement, or omission calculated to deceive a person of ordinary prudence and comprehension. A scheme to defraud may occur even absent a false statement or false representation, and may be based on fraudulent omissions. A scheme to defraud includes the knowing concealment of facts and information done with the intent to defraud.")

The "duty" for the defendants flows to the pharmacy, then from the pharmacy to the PBM. Each of the fraud counts contains some variation of the following language: the defendant, aided and abetted by others, participated in a scheme to defraud and obtain money by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing the scheme.

## Omissions, Health Care Fraud, and the Scheme to Defraud

Each of the defendants are charged with health care fraud, which is recounted in the Indictment, generally, as follows: the defendants, aided and abetted by others, knowingly and

willfully executed, attempted to execute, and participated in the above described scheme and artifice to defraud health care benefit programs affecting commerce…and to obtain money and property owned by, and under the custody and control of, said health care benefit programs.

The defendants' actions are particularly important with respect to the health care fraud counts: from the proof, it is obvious that the defendants, through their actions (payments of co-pays, fraudulent inducement, etc.) executed a scheme to obtain money from health care benefit programs. It does not matter, therefore, whether the defendants deceived the pharmacies, or whether they deceived the insurance companies themselves. The bank fraud statute, which is similar to the health care fraud statute (see, *United States v. Refert*, No. CR 05 30090, 2007 WL 30292, at *2 (D.S.D. Jan. 3, 2007), ("The health care fraud statute is modeled after the bank fraud statute, 18 U.S.C. § 1344), makes it a crime "knowingly [to] execut[e] a scheme ... to defraud a financial institution," 18 U.S.C. § 1344. In *Shaw v. United States*, 137 S. Ct. 462, 465, 196 L. Ed. 2d 373 (2016), the defendant was convicted of violating this provision. He argued that bank fraud did not apply to him because he intended to cheat only a bank depositor, not a bank. *Id*. at 465. As this Court has noted regarding the health care fraud elements, '[t]he *scheme* related to a material fact and/or included a material misrepresentation or concealment of a material fact." (Emphasis added.) In *Shaw*, the defendant argued that the government must prove that the defendant had "a specific intent not only to deceive, but also to cheat, a bank," rather than "a non-bank third party." *Id*. at 466. The Court rejected this argument. *Id*. at 468. Even if the defendants argue that they are only misrepresenting facts to the pharmacy, they have nonetheless committed health care fraud. *Id*. at 467 ("[A] man is liable to an action for deceit if he makes a false representation to another, knowing it to be false, but intending that the other should believe and act upon it") (O. Holmes, The Common Law 132 (1881).

The defendants, whether through affirmative misrepresentations, or omissions or concealments, have developed a scheme to defraud the insurance companies. It does not matter

that the false statements, or omissions, were made to, or kept from, the pharmacies. Nor does it matter that the pharmacies may, or may not, have been involved. The goal of the actions was to defraud the health care benefit program. Even if characterized as "omissions" or "concealments," the goal was the same and satisfies the definition of fraud under the health care fraud statute.

### Guilt of Others

The government requests consideration of Pattern Instruction 8.08, which reads as follows (modified):

8.08 VERDICT LIMITED TO CHARGES AGAINST THIS DEFENDANT

(1) Remember that the defendants are only on trial for the particular crimes charged in the indictment. Your job is limited to deciding whether the government has proved the crime charged.

(2) Also remember that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved these defendants guilty. Do not let the possible guilt of others influence your decision in any way.

*See also, United States v. Larch*, 399 F. App'x 50, 55 (6th Cir. 2010) (the instruction was neither confusing nor prejudicial. It places appropriate emphasis on the jury's obligation to determine whether the evidence conclusively proved the defendant guilty of the charged offense and that it should not permit the possible additional criminal liability of others to influence its decision.

### Blame the Victim Defense

Likewise, just as the defendants cannot avoid culpability for the criminal acts of others, the defendants cannot avoid culpability for "the negligence, carelessness, gullibility, or even complicity" of others, as the victim's state is not a defense to a charge of fraud. *United States v.*

*Nicoletti*, No. 15-20382, 2017 WL 1382290, at *3 (E.D. Mich. Apr. 18, 2017). Inasmuch as the defendants have sought to "blame the victim," any negligence or gullibility on the part of the PBMs or insurance companies is not a defense to the charges.

                Respectfully submitted,

                J. DOUGLAS OVERBEY
                United States Attorney

By:    *s/Perry H. Piper*
        PERRY H. PIPER, BPR #013384
        Assistant U.S. Attorney
        1110 Market Street, Suite 515
        Chattanooga, Tennessee 37402
        (423) 752-5140
        Perry.Piper@usdoj.gov

        *s/Franklin P. Clark*
        FRANKLIN P. CLARK
        BPR #034112
        1110 Market Street, Suite 515
        Chattanooga, Tennessee 37402
        (423) 752-5140
        Frank.Clark@usdoj.gov