UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:18-cr-11 |
| v. | ) | |
| | ) | Judge Mattice |
| JERRY WAYNE WILKERSON, | ) | Magistrate Judge Steger |
| MICHAEL CHATFIELD, | ) | |
| KASEY NICHOLSON, | ) | |
| BILLY HINDMON, and | ) | |
| JAYSON MONTGOMERY, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## ORDER

Before the Court is Defendant Michael Chatfield's Objection to Magistrate Judge Steger's Report and Recommendation and the Admission of Government Exhibits 2112 A-O. [Doc. 397]. Chatfield argues that Magistrate Judge Steger erred by admitting audio clips from a recording taken by Government witness George Striker during a conversation with Defendant Chatfield and other non-parties. The Government disagrees. For the reasons set forth herein, Defendant Chatfield's objection will be **OVERRULED** and Magistrate Judge Steger's report and recommendation will be **ACCEPTED and ADOPTED**.

## I. BACKGROUND

During trial, the Government sought to admit audio clips from a recording taken by George Striker, a government witness, of a conversation between himself, Defendant Michael Chatfield, non-party Jimmy Collins, and (to a much lesser extent) non-parties Ashley Collins and Candace "Michele" Craven on February 10, 2015. [Doc. 365, at 5-7].

Defendants objected on various grounds and, given their concern that the clips could prejudice the trier of fact—in this bench trial, the undersigned—even if ultimately not admitted, suggested that Magistrate Judge Steger decide whether to admit the clips. [*Id.* at 35]. The Court allowed Defendants to raise this possible course of action to Magistrate Judge Steger, and he agreed to hear the evidentiary issue and promptly deliver a ruling. [*Id.* at 42].

Magistrate Judge Steger denied Defendants' motion in limine to exclude the audio clips and overruled Chatfield's oral objection. [Doc. 367, at 12 ("To be clear, the joint motion to exclude recorded statement, which is Document No. 282 is denied. And the objection that was made orally on the record on behalf of Mr. Chatfield is denied.")]. In particular, Magistrate Judge Steger considered and rejected two arguments as to their admissibility against Chatfield: 1) he concluded that Chatfield's own statements and the statements of other participants are admissible against him as non-hearsay under Rule 801(d)(2)(A) and Rule 801(d)(2)(B), respectively; and 2) he concluded that their probative value is not substantially outweighed by their prejudice, needless cumulation, or tendency to confuse, mislead, delay, or waste time under Rule 403. Specifically, Magistrate Judge Steger found that Chatfield ratified or endorsed the statements of others during the conversation under Rule 801(d)(2)(B), that the statements of others were necessary context for understanding Chatfield's own statements, and that the recording had significant probative value that is not substantially outweighed by any of the Rule 403 factors. The Court therefore admitted the clips as to Chatfield and they were used during the testimony of George Striker. [*See generally* Doc. 368].

Chatfield now renews his objection. He concedes that his own statements "are admissible as a part[y]-opponent admission under FRE 801(d)(2)(A)." [Doc. 397, at 2]. He contends, however, that the statements of others during the conversation should not be admitted against him under Rules 801(d)(2)(B), and that Rule 403 otherwise bars admission of nearly all the audio clips submitted by the Government.

## II.    ANALYSIS

A magistrate judge's ruling on a non-dispositive matter may be modified or set aside, in whole or in part, where it is "contrary to law or clearly erroneous." Fed. R. Crim. Pro. 59(a).

A statement is not hearsay if it "is offered against an opposing party" and "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). Even where a statement is not hearsay pursuant to Rule 801(d)(2)(B), however, the Court "may exclude" it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Chatfield objects to all 15 audio clips admitted, marked as exhibits 2112 A-O. The Court takes each in turn.

### A. Exhibit 2112A

In this clip, the participants discussed how much to pay to people who order the creams. In particular, Striker seems to suggest (in the context of having recently been contacted by a federal agent) that he thinks that the payment averages out to $100 per person, while Chatfield corrects him and attempts to say it was more like "twenty-five,

3

fifty bucks." They then go on to discuss the legality of the venture. Chatfield mentions that federal investigators have only begun digging through the records of one pharmacy, and that they think Striker was "just a patient with Willow [pharmacy]" and "don't know you're selling." He also says "you don't have to tell that" if Striker is asked about the fact that he was paying others to induce them to sign up for creams, not just being paid to receive them.

Chatfield argues that his statement of "twenty-five, fifty bucks" is not admissible under Rule 403. The Court fails to see how. This statement is probative as to his attitude toward inducements and the extent to which they would be discovered by federal investigators. If it is prejudicial, it is prejudicial only in the sense that adverse evidence is prejudicial by definition, and not unfairly so. Nor, as he argues, did he fail to adopt or believe the statements of Collins and Striker. Quite the opposite, he is listening to what Striker is saying and coaching him as to how he should portray the facts to federal investigators during future interactions. Moreover, Chatfield's admissions are all but meaningless without the context provided by the statements of others. *See United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010) ("The statements made by [defendant] during the [recorded phone] conversations were non-hearsay admissions under Federal Rule of Evidence 801(d)(2)(A), and the statements made by others were not admitted to show the truth of the matters asserted, but to provide context for Henderson's admissions."). Magistrate Judge Steger therefore did not rule contrary to law.

### B. Exhibit 2112B

The participants discussed the reasons why people who had received money in connection with ordering creams might be "shaking loose" and talking to federal

investigators. They also discussed what kind of conduct is legal and illegal in this context, rates of payment to people who ordered creams, whether people were receiving calls from pharmacies, and whether there was actually a study or evaluation for which those who ordered creams were being paid.

Chatfield argues that the clip seeks primarily to introduce Collins's statements, which are hearsay, of little probative value, and substantially outweighed by unfair prejudice. He therefore objects under Rules 802 and 403. The Court, however, concludes that admission is appropriate under Rule 801(d)(2)(B) and to provide context to Chatfield's statements, which are highly probative as to the disposition of this case and not unfairly prejudicial. Magistrate Judge Steger therefore did not rule contrary to law.

### C. Exhibit 2112C

In this clip, Chatfield said "we're doing things differently," Striker responded with a question about how to present an "evaluation market study" to customers going forward, and Chatfield responded "we're going to have an evaluation within the next few days."

Chatfield argues that his statements have "virtually no probative value" and are substantially outweighed by unfair prejudice under Rule 403. The Court cannot see how. These statements are very probative, for in them Chatfield all but admits that there was no evaluation and that the payments to order creams were simply that, inducements. Nor do the statements contain any basis for unfair prejudice. Magistrate Judge Steger therefore did not rule contrary to law.

### D. Exhibit 2112D

In this clip, Collins explains at length that he thinks that his cream business was or would be legal if certain requirements were observed, in contrast to the business operated by Defendants in this case. Chatfield asked him to "explain that different" to Striker, particularly in regard to ownership of the business, and then advised Striker to "hear it from him" (him being Collins) about Collins's business, of which Chatfield and Striker were going to become a part.

Chatfield describes Collins's explanation as a lengthy monologue that he does not adopt, does not provide context, and which is unfairly prejudicial. The Court disagrees, especially insofar as Chatfield explicitly told Striker to "hear it from him" (him being Collins). That is clearly an adoption. The adoption is not unfairly prejudicial. Magistrate Judge Steger therefore did not rule contrary to law.

### E. Exhibit 2112E

In this clip, Striker recounts that a federal investigator had asked him whether there were evaluations. Chatfield explains at length that they previously had not been asking people to complete evaluations despite paying them to order creams. Collins told him to slow down, and Chatfield again said "we did not collect evaluations in the past."

Chatfield's statements are admissible under Rule 801(d)(2)(A). He argues that they should not be admitted under Rule 403. The Court concludes they are highly probative and not unfairly prejudicial. Magistrate Judge Steger therefore did not rule contrary to law.

### F. Exhibit 2112F

In this clip, Striker seeks guidance related to his interactions with federal law enforcement. Collins and Chatfield both offer their thoughts and suggestions, continuing to coach Striker toward statements and conduct that would reduce federal investigators' interest in their operation. At one point, Chatfield responds to Collins's prediction that "they're gonna work their selves through Willow" pharmacy by saying "cause that's where the fraud happened."

Chatfield argues that this conversation is primarily between Striker and Collins, with limited interjection from Chatfield. Although it may be true that more of the talking is done by Striker and Collins, it is plain that Chatfield is listening, interjecting, and responding to the content of their statements and, given Chatfield's perception of the apparent accuracy of their statements, is attempting to elicit particular decisions from Striker with respect to how he handles the federal investigation. The Court cannot agree with Chatfield's contention that this clip is not admissible under Rules 802 or 403. Magistrate Judge Steger therefore did not rule contrary to law.

### G. Exhibit 2112G

In this clip, Chatfield and Collins counsel Striker to seek legal counsel and not to speak with federal investigators. They also mention the extent to which Striker is viewed as a patient rather than a seller of the creams and Chatfield's involvement.

Chatfield argues that there is nothing probative about these statements and that they should be excluded under Rule 403.[1] The Government argues that the statements are probative of his intent. Notwithstanding how probative these particular statements are, it cannot be said that they are substantially more unfairly prejudicial than they are probative. Magistrate Judge Steger therefore did not rule contrary to law.

### H. Exhibit 2112H

In this clip, Chatfield questions Striker as to what names federal investigators were asking about, including whether and to what extent his name was discussed. Striker explained that he had been asked about Chatfield and that he lied about whether he knew him.

Chatfield argues that Striker did most of the talking and that the statements should therefore be excluded under Rules 802 and 403. It is plain, however, that he was interested in hearing what Striker said to federal investigators (necessary context for his questions), not the truth of what he said. Nor are the statements unfairly prejudicial. Magistrate Judge Steger therefore did not rule contrary to law.

### I. Exhibit 2112I

In this clip, Striker asks why investigators want to know whether he actually used the creams, and Collins responds "that's their key, that's the problem" which Chatfield clarifies to mean "if you didn't use it [the creams], it's fraud." Collins then coaches Striker on what a proper story to tell investigators would sound like, and then Chatfield laughs

---

[1] Chatfield does not explicitly cite Rule 403 but his reliance on it is apparent.

when Collins talks out a scenario in which Striker would say to law enforcement that he did not know Chatfield's last name.

Chatfield argues that these statements should be excluded under Rules 802 and 403. But Chatfield's admissions are plainly very probative and not unfairly prejudicial. Chatfield adopted the statements of Collins and Striker to the extent that he clarified and repeated their substantive content, and in any case those statements provide necessary context for understanding Chatfield's own admissions. Magistrate Judge Steger therefore did not rule contrary to law.

### J. Exhibit 2112J

In this clip, the participants discuss the overall business structure. Chatfield notes that "Willow [pharmacy] didn't have a process" and simply took insurance information and shipped creams to the addresses on file for patients. They discuss reimbursement for co-pays, Chatfield says "that's not how you word it though" and indicated that such payments should be styled as an "evaluation fee," Collins stated that one should "never say that you reimbursed" co-pays because to do so would be illegal, and then Chatfield agrees with Collins that if you pay someone well enough for an "evaluation" that they are unlikely to speak with federal investigators.

Chatfield argues that Collins is the primary speaker and only in response to Striker, and that the statements should be excluded under Rules 802 and 403. Chatfield, however, is an active participant in the conversation, ratified the statements of others throughout, and continued to coach Striker away from conduct he understood to be illegal and toward conduct that he thought would be less likely to result in interference by federal

investigators. This amounts to adoption, and in any case, the context is necessary to understand Chatfield's statements and is not unfairly prejudicial. Magistrate Judge Steger therefore did not rule contrary to law.

### K.  Exhibit 2112K

In this clip, Chatfield discusses what they might do given that they had not previously been conducting an evaluation despite paying people to order creams. Collins talks about what he would do if he were in this situation.

Chatfield argues that the exchange is primarily between Collins and Striker and that admission is improper under Rules 802 and 403. That is not obvious, but in any case, Chatfield makes highly probative statements, and the statements by Striker and Collins provide context for understanding them. Nor is the probative value substantially outweighed by unfair prejudice. Magistrate Judge Steger therefore did not rule contrary to law.

### L.  Exhibit 2112L

In this clip, Chatfield reiterates that he lacks evaluation forms for people he paid to order creams. Collins responds with suggestions for how to spin that to federal investigators.

Chatfield argues that Collins is merely joking[2] about Chatfield's lack of evaluations. Chatfield's admission on that question, however, is highly probative and the statements

---

[2] Collins does joke, here and elsewhere, that Chatfield will be going to prison. Such a statement might be prejudicial if presented to a jury, but the Court is keenly aware that it and it alone reaches legal conclusions and is not prejudiced by Collins's statements.

by Collins and (to a lesser extent) Striker provide context for those statements. Nor are they outweighed by unfair prejudice. Magistrate Judge Steger therefore did not rule contrary to law.

### M. Exhibit 2112M

In this clip, Chatfield explains that he thinks they ought to tell "you guys" that they should have sent in evaluations. He says that is the only weak link in his business, and Collins responds that the person for whom Chatfield worked (Wilkerson) was actually the weak link.

Chatfield argues that the clip is confusing because it is unclear who "you guys" are and that the confusion creates unfair prejudice that substantially outweighs any probative value. He also argues that Collins's swipe at Wilkerson should not be considered. The Court recognizes that the use of "you guys" may lessen the probative value of the statement relative to if Chatfield had specified to whom he thought that should be said, but it is still relevant and probative as to Chatfield's thinking on how to rehabilitate perceived problems with his business. The prejudice, if any, does not unfairly outweigh that value. As for Collins's swipe at Wilkerson, that standing alone has minimal probative value but does provide context for Chatfield's thinking (including insofar as Chatfield responds "right, that's the only thing"), that is, how he was thinking about and responding to problems with his business. Magistrate Judge Steger therefore did not rule contrary to law.

### N. Exhibit 2112N

In this clip, Collins brings in Candace "Michele" Craven, a nurse practitioner who wrote prescriptions for a significant number of patients who received creams, so that Striker could meet her and, if ever asked whether he had met her, respond affirmatively.

Chatfield argues that he said nothing during the entire exchange except at the end of the clip, saying "good seeing you Michele." An adoptive admission, however, does not require verbal ratification, and in this case the exchange—which was plainly geared toward providing Striker with cover in light of the investigation—could be interpreted to amount to a silent acceptance of what transpired. For that reason, admission is appropriate. Nor does the exchange yield unfair prejudice that substantially outweighs its probative value. Magistrate Judge Steger therefore did not rule contrary to law.

### O. Exhibit 2112O

In this clip, they discuss people who ordered creams and are connected with Striker. In particular, Chatfield identified some of Striker's downlinks, and Collins then coached Striker—with interjection by Chatfield—as to how he should respond to the questions of federal investigators.

Chatfield argues that this is primarily a monologue by Collins attacking the FDA. While Collins does attack the FDA, it is in the context of coaching Striker, and Chatfield interjects thoughts and assistance along the way. Chatfield thereby adopted the statements. Nor does unfair prejudice substantially outweigh the probative value of the statements. Magistrate Judge Steger therefore did not rule contrary to law.

### III.  CONCLUSION

For the reasons set forth, Defendant Chatfield's objection, [Doc. 397], will be **OVERRULED** and Magistrate Judge Steger's report and recommendation issued orally during the trial will be **ACCEPTED and ADOPTED**.

**SO ORDERED** this 25th day of February, 2020.


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE