UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:18-cr-11 |
| v. | ) | |
| | ) | Judge Mattice/Steger |
| JERRY WAYNE WILKERSON, | ) | |
| MICHAEL CHATFIELD, | ) | |
| KASEY NICHOLSON, | ) | |
| BILLY HINDMON, and | ) | |
| JAYSON MONTGOMERY | ) | |

**SUPPLEMENTAL BRIEF OF THE UNITED STATES
REGARDING *UNITES STATES V. IGBOBA***

Comes now the United States of America by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and Perry H. Piper and Franklin P. Clark, Assistant United States Attorneys, and hereby offer this Supplemental Brief regarding the Sixth Circuit's recently published decision in *United States v. Igboba*, --- F.3d ----, 2020 U.S. App. LEXIS 20717 (6th Cir. July 2, 2020).

This Court invited the parties to submit supplemental briefing and to address how the *Igboba* decision effects the loss calculation in this matter. (R. 480.) Pursuant to the Court's invitation, and to Local Rule 7.1(d), the United States submits the following.

To succinctly answer the Court's question: *Igboda* makes clear that the Court *could* attribute the loss amount from this entire jointly undertaken criminal activity to each individual in this case – resulting in higher loss amounts and guideline ranges for four of the five defendants (all except Wilkerson). However, pursuant to the Presentence Investigation Reports, the defendants are only being held accountable for what they did and for what they controlled. Even though a larger amount of loss could legally be assessed each defendant (with the possible

exception of Wayne Wilkerson – the undisputed leader of this enterprise), the United States does not seek to do so.

## *IGBOBA*

*Igboba* breaks no new ground with respect to loss amount jurisprudence. However, it does provide a thorough accounting of how loss is calculated under the fraud sentencing guidelines.

As an initial matter, *Igboba* reaffirms the longstanding proposition that, "[g]iven the difficulty of calculating loss in a fraud case, 'the district court need only make a reasonable estimate of the loss using a preponderance of the evidence standard.'" *Igboda*, at *14, *citing United States v. Ellis*, 938 F.3d 757, 760 (6th Cir. 2019). *Igboba* also reinforces the concept that a convicted defendant may be held responsible not only for the loss caused by actions he (or she) personally "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused," but also for any loss caused by a "jointly undertaken criminal activity" in which the defendant participated. *Igboba*, at *14-15, *citing* U.S.S.G. §1B1.3(a)(1). In other words, a convicted defendant may be sentenced based on loss amounts caused by other members of the criminal conspiracy, *even if* the defendant had nothing to do with the specific loss.

As *Igboba* reiterates, to hold someone responsible for the loss attributable exclusively to other members of the conspiracy/scheme, it must be shown that the acts were:

> (i) within the scope of the jointly undertaken criminal activity,
> (ii) in furtherance of that criminal activity, and
> (iii) reasonably foreseeable in connection with that criminal activity;
> that occurred during the commission of the offense of conviction, in preparation
> for that offense, or in the course of attempting to avoid detection or responsibility
> for that offense.

2

*Igboba*, at \*15, *citing* U.S.S.G. §3B1.3(a)(1)(B). Under these principles of conspiracy and scheme liability, the defendants Could be held accountable for much more pursuant to §1B1.3(a)(1). This is especially true for Michael Chatfield.

Clearly, the actions of all of the members of this scheme (Wilkerson, Chatfield, Hindmon, Nicholson, Montgomery, Kirtis Green, Jimmy Collins, and others) were within the scope of the criminal activity, were done to further its objectives, and were reasonably foreseeable to the others. Sentencing the defendants in this case under this principle would lead to increased loss amounts for four of the five.

The total loss from the Wilkerson run scheme is $35 million. Of this $35 million, Defendant Montgomery was only assessed with "a conservative estimate" of between $1.5 million and $3.5 million. (R. 454, Montgomery Revised PSR, ¶ 83.) This is a difference of **six** base offense levels pursuant to the §2B1.1 loss table. Nicholson and Hindmon were each assessed a loss amount of between $3.5 and $9.5 million, (R. 446, Nicholson Revised PSR, ¶ 76; R. 444, Hindmon Revised PSR, ¶ 89) which is **four** base offense levels less than had they been assessed the entire loss amount. Only Wilkerson – as alluded to above – was assigned with the entire loss amount from the scheme he directed, and his base offense level would not change.

Defendant Chatfield's situation is somewhat more complicated. As the Court will recall, the Court heard testimony that Chatfield "sold" his "book of business" to Jimmy Collins. This "book of business" consisted of fraudulent prescriptions written on behalf of enlisted personnel that were auto-refilling and billing Tricare. Including the losses occurring after Collins took over the scheme, the loss amount is over $100 million. Chatfield cannot credibly argue that this additional loss was not foreseeable. Nevertheless the PSR only assessed him with a loss amount between $9.5 and $25 million. (R. 448, Chatfield Revised PSR, ¶ 108.) Therefore, his base

3

offense level would be increased by **two** levels if he was only assessed the amount of loss from the entire Wilkerson scheme, and it would be increased by **four** levels if it included the loss after he handed the reigns to Collins.

However, it is unnecessary in this case for the Court to determine whether additional loss amounts were part of a "jointly undertaken criminal activity." Since the United States is not attempting to impose a loss amount based on a jointly undertaken criminal activity, it is not necessary for the Court to make any of the above findings. The Court's Probation Office has not assessed any of the defendants with any loss amount that was not a direct result of actions taken by the individual defendant or one of his (or her) downlinks; the government has not objected to that lack of assessment. Of course, as *Igboba* makes clear, "even if other people [also] participated in this activity, 'that would not negate the substantial evidence implicating [Defendant] [him]self.'" *Igboba* at 20 *citing Ellis*, 938 F.3d at 762 (6th Cir. 2019).

4

While *Igboba* might not affect the loss amount calculated for guideline purposes due to the restraint shown by the Probation Office, the fact the defendants are escaping elevated guideline ranges pursuant to the entire amount of loss is certainly a relevant consideration for the Court when entertaining the defendants' requests for a variance.

                Respectfully submitted,

                J. DOUGLAS OVERBEY
                United States Attorney

By:    *s/Perry H. Piper*
        PERRY H. PIPER, BPR #013384
        Assistant U.S. Attorney
        1110 Market Street, Suite 515
        Chattanooga, Tennessee 37402
        Perry.Piper@usdoj.gov

        *s/Franklin P. Clark*
        FRANKLIN P. CLARK
        BPR #034112
        Assistant U.S. Attorney
        1110 Market Street, Suite 515
        Chattanooga, Tennessee 37402
        (423) 752-5140
        Frank.Clark@usdoj.gov