UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT
CHATTANOOGA

UNITED STATES OF AMERICA

v.

JERRY WAYNE WILKERSON,
MICHAEL CHATFIELD,
KASEY NICHOLSON,
BILLY HINDMON, and
JAYSON MONTGOMERY

Case No. 1:18-cr-11
Judge Mattice/Steger

## JOINT MOTION FOR BOND PENDING APPEAL

Defendants Jerry Wayne Wilkerson, Michael Chatfield, Kasey Nicholson, Billy Hindmon, and Jayson Montgomery, by and through undersigned counsel, hereby file this motion for release pending appeal, pursuant to 18 U.S.C. § 3143(b). The defendants offer the following in support of their request:

### A. Applicable legal standard for bond pending appeal

A person convicted of a federal offense merits bail pending appeal if he or she is able to satisfy two requirements. First, the defendant must establish by clear and convincing evidence that he or she "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). The second requirement is that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal; an order for a new trial; a sentence that does not include a term of imprisonment; or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B). The second requirement is commonly referred to as the "substantial question" factor.

1

As noted by Judge Varlan in the *Roth* decision, a clear and convincing standard applies to the first factor only, that is, whether the defendants are likely to flee or pose a danger to the safety of any other person or the community if released. *United States v. Roth*, 642 F. Supp. 2d 796, 798 (E.D. Tenn. July 28, 2009). A preponderance of the evidence standard applies to the "substantial question" factor. *Id*. (citing *United States v. Meyers,* 95 F.3d 1475, 1489 (10th Cir.1996); *see also United States v. Affleck,* 765 F.2d 944, 953 & n. 15 (10th Cir.1985).

To find that the defendants have met the "substantial question" requirement, the court need not find that the district court committed reversible error. *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985). "[A]n appeal raises a substantial question when [it] presents a close question or one that could go either way." *Id.*

The defendants are not seeking review in the Sixth Circuit for purposes of delay. Their appeal will ask the court to determine whether this Court used the proper statutory framework when it convicted all of the defendants of violations of the anti-kickback statute. Additionally, the defendants are seeking appellate review regarding whether this Court viewed the proof within the proper statutory framework when it convicted all of the defendants (aside from Mr. Montgomery) of health care fraud, wire fraud, and mail fraud. If the defendants were to prevail on their appellate issues (discussed in some detail below), it may result in reversal of some or all of their convictions.

As for Mr. Montgomery and Ms. Nicholson in particular, the length of their sentences could more or less equal the time for the appeal process to run, making it manifestly unjust for them to begin serving sentences that the trial court itself acknowledged were proper subjects for appeal. (Doc. No. 545, Jayson Montgomery Sent'g Tr., PageID# 11222.)

2

### B. Bench trial standard of review

The Sixth Circuit will review the adequacy of the verdicts in this case by applying the same standards used to review factual findings in civil bench trials under Federal Rule of Civil Procedure 52. *See United States v. Fruehauf Corp.*, 577 F.2d 1038, 1072 (6th Cir. 1978) (holding that the findings of fact made by the district judge fully complied with the requirements of Fed. R. Crim. P. 23(c)); *see also United States v. Hogue*, 132 F.3d 1087, 1090 (5th Cir. 1998) ("Certain of the standards for determining whether a trial court's findings of fact are adequate are the same in civil and criminal cases.").

Therefore, the Sixth Circuit reviews a district court's factual findings to determine if they "support the ultimate legal conclusions reached." *Zack v. Comm'r*, 291 F.3d 407, 412 (6th Cir. 2002). Federal courts of appeals adhere to "a liberal standard for reviewing the adequacy of the [trial court's] findings." *Id.* at 412 (citing *Grover Hill Grain Co.,* 728 F.2d 784, 792 (1984)). Under this standard, "findings are to be liberally construed in support of a judgment, even if the findings are not as explicit or detailed as might be desired." *In re Fordu,* 201 F.3d 693, 710 (6th Cir. 1999). Still, even with this court's liberal approach, "the trial court's findings must support the ultimate legal conclusions reached." *Zack*, 291 F.3d at 412 (quoting *Grover Hill Grain Co.,* 728 F.2d at 792). Such findings are essential to "reveal the logic behind the trial court's decision," and they must "enable an appellate court to conduct a meaningful review of the trial court's order." *Id.* (citing *Grover Hill Grain Co.,* 728 F.2d at 792–93) ("The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.").

### C. The Court applied an incorrect legal standard.

All five defendants were convicted of violations of paying and/or receiving illegal remuneration in violation of 42 U.S.C. § 1320a-7b(b)(2). That statute reads, in relevant part, as follows:

> Whoever *knowingly and willfully* offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly. . . (B) to purchase . . . any . . . service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony. . . (emphasis added).

42 U.S.C. § 1320a-7b(b)(2)(B). All of the defendants, aside from Mr. Montgomery, were convicted of at least one count of health care fraud count, which required this Court to find beyond a reasonable doubt that a defendant:

> knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money. . .owned by. . .any health care benefit program.

18 U.S.C. § 1347.

In order to obtain a conviction for wire or mail fraud, there are three required elements. The only difference between the two statutes is whether the alleged fraud occurs through the use of the mail or wire transmissions. The basic elements of wire fraud are: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Prince,* 214 F.3d 740, 747–48 (6th Cir. 2000).

4

**Illegal remuneration counts**

Mr. Wilkerson, Mr. Chatfield, Ms. Nicholson, Mr. Hindmon, and Mr. Montgomery respectfully submit that the Court as trier of fact applied an erroneous legal standard when assessing the defendants' guilt on the illegal remuneration counts. Specifically, the defendants submit that the Court concluded that the fraud consisted of (1) the defendants' failure to disclose the cost of the compounded creams and (2) that the failure to disclose the cost violated an improperly inferred legal duty. None of the statutes of conviction impose upon the defendants a duty to disclose the cost of the medication. Therefore, the defendants should not have been found guilty of fraudulent activity for failure to comply with a nonexistent duty. All five defendants waived a request for written findings of fact and conclusions of law at the close of trial pursuant to Fed. R. Crim. P. 23(c). Therefore, the defendants rely upon the Court's statements at their sentencings as an indication of whether the Court applied the proper legal standard when evaluating the proof at trial.

Mr. Montgomery was convicted solely on two counts of receipt of illegal remuneration. (Doc. No. 409.) At Mr. Montgomery's sentencing hearing, the Court said that it convicted him of those counts because "at some point he became familiar enough with what was going on here that he beyond a reasonable doubt in my opinion knew or at least should have known that what was going on here was fraudulent." (Doc. No. 545, Jayson Montgomery Sent'g Tr., PageID# 11174.) The Court seems to suggest that Mr. Montgomery's convictions for receipt of illegal remuneration require a finding of fraud. The statute does not in fact require such a finding. 42 U.S.C. § 1320a-7b(b)(2)(B). Second, it appears from this statement that the Court concluded that the least culpable mens rea required in order to convict Mr. Montgomery is that he *should have*

*known* that the conduct was illegal. However, the statute requires more than mere negligence – it requires knowing and willful conduct.

In order to convict the defendants for the payment or receipt of illegal remuneration as prohibited by 42 U.S.C. § 1320a-7b(b)(1) and (2), the Court had to find beyond a reasonable doubt that they acted knowingly and willfully. (Doc. 355, Order, PageID# 3984.) As the Sixth Circuit Pattern Jury Instructions state, an act is "'knowingly' done if done voluntarily and intentionally, and not because of mistake or some other reason." There is very limited precedent in criminal prosecutions of the illegal remuneration statute in the Sixth Circuit. The Fifth Circuit has addressed what "willfully" means in the context of this statute. It "means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (quoting *United States v. Garcia*, 762 F.2d 1222, 1224 (5th Cir. 1985)); *see also United States v. Starks*, 157 F.3d 833, 837-838 (11th. Cir. 1998) (quoting 11th Circuit pattern instructions).

**Fraud counts**

The defendants submit that the Court did not apply the correct elements of health care fraud in evaluating the Government's proof for the other four defendants. It is unnecessary to cite the Court's remarks at all five sentencings. The Court's comments with respect to its findings regarding the elements of fraud make it apparent that the Court's findings were applicable to all four defendants who were convicted under the fraud statutes.

Mr. Chatfield was found guilty of multiple counts, including health care fraud conspiracy, health care fraud, wire fraud, and mail fraud. (Doc. No. 409.) The Court noted at Mr. Chatfield's sentencing hearing that:

6

> I believe that the overall fraud that the Court found. . .there was, in fact, *some duty on the part of the defendants in the case* or at least, at least Mr. Chatfield and others. . .to disclose to someone, either the insurance company or the patient or someone the cost of these creams. . .that would be charged to the insurance company. And I feel further that there was probably *some duty to disclose the relationship of that cost to be charged to the insurance company to the medical efficacy of the creams themselves*.

(Doc. No. 547, PageID# 11394-11395 (emphasis added).)

The Court went on to say that "I would be the first to admit that the source [of a legal duty] was not as clear as I certainly would have liked, although, I felt comfortable finding beyond a reasonable doubt that it was a material fact that needed to be disclosed in this. So, that's, to me, the fraud, broadly stated, of which Mr. Chatfield was convicted." (*Id*. at 11395.)

As is evident from the statement below at Mr. Chatfield's sentencing, this Court seemed to link an inferred duty to disclose the cost of the creams with the medical efficacy of the creams. As discussed in further detail below, the defendants are appealing the denial of their motion to exclude proof regarding the medical efficacy of the creams. Because the medical efficacy of the creams was not a required element of any of the statutes of conviction, it was error for the Court to admit that proof, which may have led the Court to make improper inferences regarding the required elements.

> [S]o, I guess if that were the fraud, in other words, the failure to disclose a material fact, okay, the underlying failure to disclose a material fact, it only leaves a few options available to say. . . an expert or someone that somehow the cost that was being charged to the insurance company was somehow commensurate with the medical efficacy, necessity, whatever you want to call it, of the creams themselves.

(*Id*. at 11395-11396.)

During Mr. Hindmon's sentencing, the Court acknowledged that it was difficult to find the source of the implied legal duty to disclose the cost of the compounded creams. That, in fact,

7

is because there is no statutory requirement for the defendants to disclose that information to the insurers, patients, or anyone else. At Mr. Hindmon's sentencing, the Court explained:

> I know what I was thinking when I rendered the verdict . . . it's that the prices that were being charged for these creams were in my mind extraordinarily exorbitant for any legitimate medical use that they may have conferred and could have been obtained on an open market at a very tiny fraction of the cost which was charged to the insurance companies . . . I think implicit in the Court's verdict had to be that, and this is where this whole case becomes difficult, that somehow the defendants were under an obligation, *even though the Court will probably concede that obligation is not as explicit as the government might hope it was*, to disclose what was being provided to the patients and to their insurance companies and what the relative value of medical necessity was being served by these compounds versus what could be bought over the counter in . . . any corner pharmacy. I think that's the fraud in this case.

(Doc. No. 546, PageID# 11271 (emphasis added).)

At Mr. Wilkerson's sentencing, the Court reiterated that it could not point to one particular statute that imposed a legal duty to disclose the cost of the compounded creams. Critically, the Court found that the implied duty was a material fact upon which the fraud was predicated. As a result, the fraud convictions for all four defendants rest on the Court's misinterpretation of what constitutes a material fact, and therefore, what can be used to support a fraud conviction. While sentencing Mr. Wilkerson, the Court stated that:

> [i]t would have been much better if the law had been clear about exactly where the duty was, but at the end of the day *what I found is that there is somehow this overarching duty to disclose, you know, a material fact* that may have a bearing on that. And that's what I decided that, what I've described as is the failure to disclose the extent to which the cost that were being charged was commensurate with any medical efficacy of the creams, that's what had to be disclosed.

(Doc. No. 546, PageID# 11602 (emphasis added).)

8

The Court went on to say: "[i]t would certainly be better if the law were clearer about the source of that duty, but, see, what I've also said, I think that's the nature of fraud." *Id.* "[W]ould you agree with me that the law of fraud, always has been, always will be, there are different gradations of it, and some cases are much closer than others, let me just leave it at that." *Id.* at 11603.

Unlike an affirmative misrepresentation that is material, the Sixth Circuit has held that fraudulent pretenses or representations can include omissions, or concealment, "where one says nothing but has a duty to speak." *United States v. Maddux*, 917 F.3d 437, 443-446 (6th Cir. 2019). The *Maddux* decision, when read in conjunction with the notes to the Sixth Circuit Pattern Jury Instructions, supports that an omission or concealment can only be material under the fraud statutes when there is an affirmative legal or contractual duty to provide information that was omitted or concealed. Mr. Wilkerson, Mr. Chatfield, Ms. Nicholson, and Mr. Hindmon had no legal duty to inform the insurers or pharmacy benefits managers regarding their existence or actions. Secondly, there was no proof at trial that any of them actually knew that he or she was obligated to make such a disclosure. In fact, the proof demonstrated that none of them had any ability to make such a disclosure or cause anyone else to make it. Secondly, there was no proof at trial that any of them actually knew that he or she was obligated to make such a disclosure.

One of the government's materiality witnesses, Mr. Steve McCall from CVS Caremark, testified that Caremark does not communicate with third parties that are not contracted with Caremark and cannot discuss details of medical records because of the Federal HIPAA law. Therefore, it was improper for the Court to rest its finding of guilt on a nonexistent legal duty to disclose. (Doc. No. 334, Steve McCall Testimony Tr., PageID# 3784.)

9

### D. The Court committed error by admitting irrelevant testimony concerning the medical efficacy of the creams.

The Amended Third Superseding Indictment states, "The defendants informed the customers that the creams and medications would treat a variety of ailments, including pain, eczema, psoriasis, stretch marks, warts and other conditions." (Doc. 254-1, Amended Third Superseding Indictment, PageID#1333.) By implication, this allegation asserts that the creams did not effectively treat these conditions. Later, the indictment alleges "compounded drugs, drugs which were exorbitantly priced and for which there was little if any medical necessity." (*Id*. at PageID#1362.) The defendants submit that it was error for the Court to admit evidence concerning the effectiveness of the compounded creams because Federal Rule of Evidence 403 excludes relevant evidence "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988). The Court, in its own words, acknowledged that its finding of guilt on the fraud counts rested in part on its conclusion that there was some duty for defendants' to weigh the cost of the medications based on whether the drugs were necessary and/or effective. Therefore, the introduction of evidence related to medical necessity and effectiveness contributed to the Court's application of an improper legal standard.

### E. The defendants do not pose a risk of non-appearance, nor are they a danger to the community.

United States Magistrate Judge Christopher Steger found, and the government agreed, that none of the defendants presented a risk of flight, nor were they considered to be a danger to the community when all five were placed on pretrial release conditions following indictment.

10

Case 1:18-cr-00011-HSM-CHS   Document 557   Filed 09/11/20   Page 10 of 15   PageID #: 11716

The defendants have followed the directives of the United States Probation officers responsible for their pretrial supervision. While Mr. Montgomery concedes that there he engaged in improper communications with his mother, Ms. Dawn Montgomery, in violation of his pretrial release conditions, the Court heard proof regarding those communications and chose not to take any action regarding the conditions of Mr. Montgomery's release. (Doc. No. 217. )All five defendants have remained employed and continued to care for their immediate and extended families for the past several years throughout the investigation, trial, and sentencing. Each maintains the support of a wide network of friends. From the time this investigation began more than five years ago, the defendants had ample opportunity to flee and did not.

None of the defendants had serious criminal histories prior to their convictions. The government is likely to argue that the calculus has changed now that all of the defendants stand convicted of federal felony offenses. However, the government cannot support an argument that this Court's verdict in a fraud prosecution gives rise to an inference that any of the defendants are dangerous. None of the defendants have been convicted of or even accused of any conduct involving violence, firearms, or other potential markers of dangerousness. Therefore, their release on bond pending appeal does not present a danger to the community. Mr. Wilkerson, Mr. Chatfield, Ms. Nicholson, Mr. Hindmon, and Mr. Montgomery attended a trial spanning several months, knowing that they were very likely to face the potential for lengthy sentences of incarceration if convicted. In addition, they traveled to Winchester, Tennessee for their sentencings, each of them knowing that they were almost certainly going to be sentenced to some term of imprisonment. The past conduct of all five defendants in their unfailing compliance with release conditions and attendance at all court proceedings is strong evidence that none of them present a flight risk. Any potential concerns the Court may have regarding a risk of non-

appearance can be mitigated by conditions designed to assure the defendants' presence at any future court appearances, including measures like home confinement. See 18 U.S.C. § 3143(b)(1)(A) (citing § 3142(c) which requires consideration of whether release upon conditions would mitigate the risk of nonappearance). The defendants do not believe home confinement would be necessary to assure their presence, but would certainly be willing to fully comply with any conditions the Court believes are necessary.

### F. COVID-19 presents a serious threat in the Bureau of Prisons.

As of September 8, 2020, 120 inmates and staff members have died of complications from COVID-19. *See* Bureau of Prisons, https://www.bop.gov/coronavirus. Most of the deaths appear to be those whose preexisting conditions placed them at higher risk of serious illness, which does not describe the defendants in this case. While all five defendants are generally healthy, there are examples in the Bureau of Prisons, and globally, of people with no known high-risk factors who died from COVID-19 related complications.

In various procedural contexts, federal courts across all districts have released prisoners because of the unique threat posed by the COVID-19 pandemic. That includes situations in which defendants were released pending adjudication of post-conviction claims. *See*, *e.g.*, *United States v. Nkanga*, No. 18-CR-713 (JMF), R. 120 (S.D.N.Y. Apr. 7, 2020) (granting bail pending adjudication of habeas petition in light of "the precise timing of the sentencing proceeding . . . in relation to the emerging COVID-19 pandemic" and the medical issues of the petitioner). The unprecedented circumstances facing the prison system has continued to overwhelm even the good-faith efforts by the Bureau of Prisons staff to manage infection and illness rates among their staff and detainees. Numerous courts have acknowledged that the extraordinarily dangerous nature of COVID-19 is felt most acutely by those in institutional settings. In *White*, a district

12

court decision from the Middle District of Tennessee, the defendant was granted compassionate release even though he had not exhausted administrative remedies. *United States v. Timothy White*, 3:18-cr-00349 (M.D. Tenn. Apr. 1, 2020). Mr. White had been recently sentenced but was not yet designated to a BOP facility. The court found that he could not apply for compassionate release, and therefore waived exhaustion. *Id.*

In *United States v. Garlock*, the district court extended the defendant's date for surrendering to serve an already-imposed prison sentence until September 1, 2020, concluding that no one should be entering BOP custody absent "truly extraordinary circumstances". *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided").

The health risks—to inmates, guards, and the community at large—created by large prison populations cannot be overstated. Creating large pockets of infection within prison populations has placed a strain on the medical resources of the communities in which they are housed. In order to avoid adding to the chaos and creating unnecessary health risks, defendants such as Mr. Wilkerson, Mr. Chatfield, Ms. Nicholson, Mr. Hindmon, and Mr. Montgomery who are on release and scheduled to surrender to the Bureau of Prisons in the coming months should, absent truly extraordinary circumstances, have their surrender dates extended until this public health crisis has passed.

**Conclusion**

Based on the foregoing analysis, Mr. Wilkerson, Mr. Chatfield, Ms. Nicholson, Mr. Hindmon, and Mr. Montgomery satisfy the standard for bail pending appeal under 18 U.S.C. § 3143 and respectfully request that this Court order them to be released pending appeal.

Respectfully submitted,

s/ *Jerry Wayne Wilkerson*
14439 Garden Gate Drive
Jacksonville, Florida 32258
423.314.5702
*Pro Se*

s/ *David M. Eldridge*
David M. Eldridge (TN Bar #012408)
Eldridge & Blakney, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010

s/ *Zachary R. Walden*
Zachary R. Walden (TN Bar #035376)
Eldridge & Blakney, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010
*Attorneys for Michael Chatfield*

s/ *Kasey Nicholson*
14439 Garden Gate Drive
Jacksonville, Florida 32258
731.234.6010
*Pro Se*

14

*s/ Jennifer Niles Coffin*
Jennifer Niles Coffin (TN Bar #020703)
Federal Defender Services of Eastern
Tennessee, Inc.
Assistant Federal Defender
800 South Gay St., Suite 2400
Knoxville, Tennessee 37929
(615) 736-5047

*s/ Erin Rust*
Erin Rust (MO Bar #63207)
Federal Defender Services of Eastern
Tennessee, Inc.
Assistant Federal Defender
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349

*s/ Gianna Maio*
Gianna Maio (TN Bar #024579)
Federal Defender Services of Eastern
Tennessee, Inc.
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349
*Attorneys for Billy Hindmon*

*s/ R. Dee Hobbs*
R. Dee Hobbs (TN Bar #010482)
P.O. Box 11308
Chattanooga, Tennessee 37401
(423) 266-6461
*Attorney for Jayson Montgomery*

15